No. 24,250.

JAMES H. ELLIOTT, *Appellant,* v. ZELLA M. BALL, *Appellee.*

SYLLABUS BY THE COURT.

ACTION ON PROMISSORY NOTE—*Evidence Sustains Plea of Payment—Demurrer Overruled.* In an action on a promissory note, where the defense was a plea of payment, the evidence examined and held sufficient to withstand a demurrer thereto, and to support a verdict and judgment for defendant.

Appeal from Cherokee district court; FRANK W. BOSS, judge. Opinion filed May 12, 1923. Affirmed.

*A. H. Skidmore, C. B. Skidmore, Al F. Williams,* and *Don H. Elleman,* all of Columbus, for the appellant.

*Fred A. Walker,* and *C. A. McNeill,* both of Columbus, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action on a promissory note for $1,000, dated April 28, 1916, due in six months, given by defendant and her husband to E. W. Youngman and by him indorsed and transferred to plaintiff before maturity. The note showed indorsement of interest payments until September 2, 1920.

Defendant pleaded payment of the note on March 26, 1919, and denied having paid any interest thereon after that date; and in a cross-petition she alleged that plaintiff was president of a bank in which she and her husband had a deposit of funds, and she prayed for an accounting of any funds paid out by plaintiff to himself as pretended interest credits on the note.

The burden being on defendant, she adduced evidence tending to show that she and her husband (since deceased) had resided on a farm owned by them subject to a $3,500 mortgage, that they borrowed $1,000 from Youngman, giving him the note in question, and secured it to him by a second mortgage on their farm. In 1919 they procured a new loan for $6,000, and plaintiff handled the money. It was to be used by plaintiff to take up the $3,500 mortgage, the $1,000 note and mortgage to Youngman which had been transferred to plaintiff, and to pay some other indebtedness due plaintiff's bank. She testified:

"I never saw the money. It was supposed to pay our debts. Never saw the $6,000 mortgage after that, or never saw the $6,000. We trusted it to Elliott, to his honesty. We told Elliott to take care of the $3,500 note, and

the $1,000 note and our indebtedness to the bank. This loan was made in 1919, in April, or somewhere about that time. Elliott never demanded payment of his note after that time, and myself or Dr. Ball never paid any interest after that to my knowledge. I never paid interest on the $1,000 note, or Dr. Ball did not to my knowledge. . . .

"I am [now] living in Salt Lake City. . . .

"Q. I will ask you to state if you think the $1,000 note and mortgage to Elliott was paid out of that $6,000 mortgage? A. That is what the money was borrowed for.

"Q. Is it your judgment that it was paid out of that? A. Yes, sir.

"Q. If not, it has not been, paid so far as you know, has it? A. It was paid out of that. . . .

"Q. Now, if that $2,351.25 was put to the credit of Dr. Ball in the Hallowell State Bank instead of being paid to Elliott, then this $1,000 note would not be paid would it? A. I don't know. . . . I have nothing to show that my husband got credit at the bank for the difference between what he owed the Warren Mortgage Company and the $6,000. I have nothing to show that he did. I don't know what became of the $2,351.25. I suppose it went to pay debts. . . . Mr. Elliott wrote a written statement showing all we owed at the bank. That was in the fall of 1920. I searched for the paper, but can't find it. At the time he rendered a written statement we talked it over with Mr. Elliott and he said it was all we owed. . . . My claim is that the $1,000 and whatever interest there was thereon was paid out of the $6,000 loan. There is where I claim it was paid."

The official county record was offered in evidence. It showed entry of satisfaction of the $1,000 mortgage on date of March 26, 1919, by Youngman. On behalf of plaintiff, Youngman testified that he released the mortgage at the request of plaintiff. On his own behalf, plaintiff admitted that he handled the finances of the $6,000 loan, that he paid off the $3,500 and interest thereon and gave defendant's husband credit in the bank for the balance, $2,351.25, and he introduced loose ledger sheets, showing that the whole sum had been checked out by various items, not any one of which was exactly for $1,000; and plaintiff testified positively that he had never been paid the $1,000 note. Aside from items aggregating $495.80 for interest which had been indorsed on the note, the bank records did not show to whom or for what the balance of the deposit of $2,351.25 had been checked out.

The further testimony did not add much to the foregoing on behalf of either litigant. There was, of course, the evidence inherent in the circumstance that the proceeds of the $6,000 loan had all been disbursed under the supervision of plaintiff, and that, if his testimony was true, he had suffered his debtors to check out all the

money without paying the $1,000 note which he held, notwithstanding he had canceled the security and notwithstanding it was several years overdue. A jury could hardly fail to consider the significance of such an incident when they came to determine the credence to be given to plaintiff's testimony.

From a verdict and judgment in defendant's favor, plaintiff appeals, contending that the court erred in overruling the demurrer to defendant's evidence. In this connection he cites *Streeter v. Dowell*, 43 Kan. 545, 23 Pac. 599, in which it was held that where the evidence is so disconnected, uncertain, incomplete and shadowy that it is questionable whether it rises to the dignity of evidence at all, an exception is made to the ordinary rule that findings of a jury, when approved by the trial court, will not be disturbed on appeal.

But in this case, the situation will not permit the application of such rule. In view of the evidence which we have briefly recited above, plaintiff is manifestly in error in contending that the proof of payment rests entirely upon the testimony of the defendant, and that her testimony was too uncertain, incomplete and shadowy to show payment. The woman testified that plaintiff gave her and her husband a statement showing all they owed, and that she had a conversation with plaintiff to the same effect. The statement and the substance of the conversation tended to prove payment. The $6,000 was borrowed to pay off the $1,000 note and other indebtedness and plaintiff handled the funds for the purpose of paying himself and others. That fact tended to prove payment. The plaintiff directed that an entry of satisfaction of the mortgage securing the note be made on the county records, March 29, 1919, two years and seven months before this action was begun. That fact tended to prove payment. The fact that notwithstanding the note was past due and that he had caused his mortgage security to be canceled and entered of record as satisfied, and that the farm had been mortgaged to raise money to pay this note and other debts, and that the funds were entrusted to plaintiff and that he had supervision of their disbursement, and that he saw the money paid out from time to time until it was all spent, without any effort of his to collect on the long overdue note, was of some evidential significance tending to prove payment. Under such evidence, facts and circumstances, the trial court could not properly do otherwise than overrule plaintiff's demurrer thereto. Any other ruling would have been a plain usur-

pation of the jury's functions. We cannot concern ourselves with the fact that plaintiff swore he had never been paid. The jury did not believe him. (*Bruington v. Wagoner*, 100 Kan. 439, 164 Pac. 1057.) On the very substantial showing made in behalf of defendant if this court were trying the issue of fact, we might reach the same conclusion the jury did. The record contains no error and the judgment is affirmed.