No. 33,520

Lydia Parker, *Appellee,* v. The Farmers Union Mutual Insurance Company and The Maryland Casualty Company, *Appellants.*

(73 P. 2d 1032)

Opinion filed December 11, 1937.

C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton and R. E. Haggart, all of Salina, for the appellants.

Ralph Knittle, of Salina, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from an award of compensation on account of the death of John M. Parker, the janitor employee of a corporation in Salina.

The principal contention here is that there was no substantial, satisfactory, competent evidence to establish the fact that the deceased had sustained an accident in defendant's employment which caused his death.

The evidence was to this effect:

The Farmers Union Mutual Insurance Company owned an office building in Salina. Parker was employed as that company's janitor for several years. His regular working hours were from five o'clock p. m. to one o'clock a. m. One of his duties was to help move tenants' furniture as directed. It was also his duty to report each morning to J. E. Cameron, an officer of the corporation, concerning anything unusual which happened during the hours he was on duty.

Sometime in the spring of 1935 one of the company's tenants desired to move its offices from one part of the building to another. Parker assisted in the moving, and while carrying a box of books he stumbled over a rug and the box struck the top of a desk, defacing it. This mishap occurred about 11 o'clock p. m., while Parker was alone in the building. Before leaving for home at 1 o'clock a. m. he left a note for Mr. Cameron reporting the incident, but did not state that any accident had happened to himself. When he arrived home shortly after one o'clock that night he told his wife, claimant herein, that his chest struck the box of books when he tripped over the rug,

and that "his chest was hurting him awful bad." In her testimony the claimant was uncertain about the date when this alleged accident happened. She did not examine her husband's chest that night nor until some time in May, about three or four weeks later, at which time there was a red spot on his chest the size of a dollar. On her advice Parker consulted a doctor, about May 15; and about the same time he informed Mr. Cameron, his superior officer, that he had hurt his chest at the same time he had fallen with the box of books and had marred the desk.

Cameron testified that when he arrived at his office one morning in April, 1935, he found a note from Parker reporting the defacing of the desk. He had not preserved the note, but stated its substance, which was that "in carrying a box out of Mr. Dennison's office he [Parker] stumbled on the rug and dropped the box on the desk."

"Q. Did you see the desk? A. Yes, sir.

"Q. And was it marred? A. Yes, sir.

. . . . . . . . . . . . . .

"Q. And you talked to him then about the matter that was in the note? A. Yes, sir.

"Q. Now, do you know of any injury, whether or not he had any injury to his chest prior to that time? A. No, I do not.

"Q. And did he make any complaint about his chest after that time? A. Some time later, yes.

. . . . . . . . . . . . .

"Q. When was it you first heard Mr. Parker hurt his chest, after you received that note? A. . . It was some time after he told me about the accident marring the desk.

. . . . . . . . . . . . .

"Q. Can you remember about how long after that he went to a doctor? A. No, I don't. . . . This bump on his chest, he said the doctor said that was caused from a bump or bruise.

"Q. When did he first tell you he had a bump on his chest? A. I don't recall exactly, but I know it was sometime after he reported the accident. Possibly a month or six weeks, possibly two months.

. . . . . . . . . . . . .

"Q. When again did you talk to him about his chest? A. Possibly a couple of weeks after that.

"Q. That would be six weeks or two months after the accident? A. Yes.

"Q. What did he say then? A. He opened his shirt and showed me the swelling he had then. He had it covered over with a pad.

. . . . . . . . . . . . .

"Q. Did he say anything to you about where he got the bump? . . . Did he ever tell you about that? A. He told me he got it when he dropped that box about two months ago.

. . . . . . . . . . . . .

"Q. Did you ever talk to him again before his death? A. Yes, quite often.

"Q. You say about two months after the accident, you told Mr. Knittle, you advised him to file claim for compensation? A. That was in the fall of that same year.

"Q. That would be four or five months after the injury? A. Yes.

"Q. When was the first time you talked to him and he told you he hurt it on the box? A. About the time Doctor Jenney [Parker's physician] told him it was caused by a bump or blow, when it started swelling."

From the time of the accident Parker was to some extent under the observation and professional care of Doctor Jenney, but he continued to perform his duties as a janitor for about fourteen months. During that interval the injury, affliction, or disease in his chest—whatever it was—got no better; and eventually, on June 6, 1936, it had grown to a lump the "size of a baby's head" and was removed by a surgical operation. Following that operation Parker was confined to his bed until he died, on September 16, 1936.

In the proceedings before the commissioner of compensation four doctors gave testimony. Doctor Jenney, to whom Parker had gone for treatment about three weeks after the alleged accident and injury and who continued as Parker's physician until his death, testified that when Parker first came to his office he had a hard protuberance, tumor-like; and he, Doctor Jenney, believed that the fall and hurt Parker had told him of was the cause of the injury which eventually developed into sarcoma of the breastbone. Another physician, Doctor Fitzpatrick, who had taken X-ray pictures of Parker's chest in March, 1936, testified that they revealed a growth on the chest and bone, destruction of the sternum and cartilage of the ribs in the front of the chest. He gave it as his professional opinion that Parker's affliction "could have possibly come from" the alleged injury to his chest in the spring of 1935. Doctor Mowery, who performed the surgical operation to remove the growth from Parker's breastbone, gave it as his professional opinion that the tumor resulted from the injury. An expert called by respondent, Doctor Seitz, testified that sarcoma malignancies are not traceable to trauma in more than two percent of the cases, or even less, but he added:

"The important thing is the establishment of the fact of a trauma, and finding within this tissue or that immediately adjacent to the—I have listened to this testimony—to the periosteum and the structure of the bone or immediately adjacent to the point of the alleged injury, evidence of the injury. If in such a tissue anywhere from four weeks to a year, or even more, a malignancy develops, I believe it would be considered due to trauma."

The claimant herself testified:

"Q. Now, do you recall an incident wherein a desk was scratched up in the Metropolitan offices in this Farmers Union Life Insurance Company building? . . . A. Yes, I do.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. . . . Now with reference to the time that desk was scratched, did your husband come home that night? A. Yes, he came home shortly after one o'clock.

"Q. When he came home that night, did he make any complaint with regard to pain? . . . A. He said that his chest was hurting him awful bad.

"Q. Anything else? A. I asked him what the trouble was. . . .

"Q. With regard to his chest? A. Well, he said his chest hurt awful bad; that is all I can say.

"Q. Did he make any complaint at that time as to having received an accidental injury? Answer 'yes' or 'no.' . . A. Yes.

"Q. Did he tell you where he had been hurt? . . . A. Well, yes. He said that he had tripped over a rug in the Metropolitan office and fell with a heavy box of books on the desk, and the corner of the box struck him on the chest and marred the desk up, and he left Mr. Cameron a note to fix the desk. I think he told him he was injured in the note, I don't know."

Timely objections to this line of examination were interposed. Its competency was challenged before the commission, and before the court and again here.

Passing, for the time being, the testimony of the claimant, which is objected to as incompetent under the hearsay rule, shall this court say that Parker's prompt report to Cameron, his superior, about his tripping and falling with the box of books, his later statement to Cameron that he hurt his chest in the same fall, the rapid growth of the malignant tumor on his breastbone, and the professional opinions of the doctors that such a malignant growth was probably due to the injury sustained as narrated by Parker—all these evidential matters, including the pertinent circumstances, were not sufficient to establish the fact of the accident and injury? How could the evidence be stronger? Parker was working alone when the accident occurred. Should his widow and children be denied compensation because of the want of an eyewitness to the accident? Should the claimant be penalized because he did not notify his employer at once of his injury? However painfully his chest was hurt that night, he could not be expected to foresee that his injury would develop into a malignant growth that would eventually cause his death. It is not uncommon for a workman to mistake or minimize the gravity of an injury he has sustained in his employer's service, and consequently to delay notifying his employer of the facts. In *Shmana v. Swift*

& Co., 113 Kan. 340, 342, 214 Pac. 567, the workman stepped in a pool of dirty water, which caused some itching, and then some pain, and later developed into an infection which caused him to consult a physician, and eventually necessitated his going to a hospital. He entered the hospital eighteen days after he had stepped in the dirty water, at which time his employer was first apprised of the facts. This court held:

"Where the nature of the injury is such that its serious character does not develop for a few days, notice of the injury given on the eleventh day thereafter, of the time, place and nature of the accident, is sufficient under section 5916 of the General Statutes of 1915, where the notice given and surrounding circumstances are of such character as would indicate that no prejudice resulted to the employer by reason of the delay in giving the notice." (Syl. ¶ 2.)

Other cases where compensation was awarded although the workman had refrained from reporting his accident and injury for varying periods up to several months because he did not at first appreciate the gravity of his injury or its relation to some antecedent accident are: *Construction Co. v. Russell,* 163 Tenn. 410, 416, 43 S. W. (2d) 208; *Unity Drilling Co. v. Bentley,* 77 Okla. 76, 186 Pac. 239; *Consolidated Underwriters v. Seale,* (Tex. Civ. App.) 237 S. W. 642; *Brackett's Case,* 126 Me. 365, 138 Atl. 557. See, also, 54-page note in 78 A. L. R. 1232 *et seq.*

Touching the testimony of Mrs. Parker, the claimant, its admissibility is to be governed not by the venerable rules of Starkie, or Greenleaf, or Underhill on Evidence, but under the liberal rules applicable to hearings before the compensation commission. Although desirable to the efficient administration of the compensation act that the examiner should understand the law of evidence, particularly the insufficiency of mere hearsay to support a claim for an award (*Mayeur v. Mining Co.,* 106 Kan. 123, 186 Pac. 1035), the statute itself contemplates that the rigid rules prescribed for the trial of actions at common law shall not apply to proceedings under the compensation act. In *Freeman v. Fowler Packing Co.,* 135 Kan. 378, 11 P. 2d 276, the competency of the evidence upon which an award was given was challenged. This court said:

"The commissioner as an administrative officer heard testimony concerning the subject of death resulting from accidental injury, not admissible under the rules of evidence applicable to procedure in court. He was permitted to do this by statute (R. S. 1931 Supp. 44-523). In reviewing the commissioner's work, the courts may not nullify it by applying their own standards; and if the commissioner's decision be based on substantial and satisfactory evidence, relevant, reasonable, and persuasive, though not technically

838

admissible under the rules of evidence governing procedure, the decision will be upheld." (p. 380.)

In *Holt v. Peterson Construction Co.*, 134 Kan. 149, 151, 4 P. 2d 428, it was said:

"The compensation commissioner before whom the testimony is taken is not required to be a lawyer and may not be versed in the technical rules of evidence that may be invoked and applied in courts trying common-law cases. Testimony that is relevant, reasonable, persuasive and which induces belief, may be the basis of the findings of the commission, and if its action and decision are free from fraud, unfairness or misconduct, and are based upon substantial and satisfactory evidence, they will be upheld. (*Coe v. Koontz*, 129 Kan. 581, 283, Pac. 487. See, also, R. S. 1930 Supp. 44-523.)

"Much liberality is allowed in the taking of testimony in boards, commissions, committees and other organizations acting for the public, such as public service commission, county commissioners and boards of equalization. (*Lynch v. Chase*, 55 Kan. 367, 40 Pac. 666; *Meffert v. Medical Board*, 66 Kan. 710, 72 Pac. 247, and cases there cited.)"

An instructive case, and one quite analogous to the case at bar, is that of *Standard Oil Co. v. Mealey*, 147 Md. 249, 127 Atl. 850, where a widow made a claim for compensation for her husband's death on the alleged ground that he had sustained a fatal injury in his employer's service on January 16, 1923. He did not report the accident to his employer until sometime in February, but when he came home on January 16 he did tell his wife that he had slipped and struck his left side on his wagon that day, and that he had the feeling as if something had torn, and she felt a lump or "bubble" at the place indicated. Forty-six days later he died of lymphosarcoma, a malignant growth of the glands, and on his widow's testimony narrating what her husband told her, together with the circumstances, the belated report of the accident to the employer, and the conflicting and doubtful testimony of doctors as to the likelihood that the malignant growth had been superinduced by injury sustained by falling against the wagon, an award of compensation was granted to the widow. On appeal, the court discussed the question at length. We quote in part:

"Divergent views have been entertained in other jurisdictions on the relaxation by a court of its ordinary rule for excluding hearsay evidence on review of compensation cases. The commissions which administer the laws in the first instance cannot be expected to adhere closely to the rather complex rules developed for jury trials in judicial proceedings, and they are in many compensation laws expressly relieved from doing so. Section 10 of the Maryland act provides that 'the commission shall not be bound by the usual common law or statutory rules of evidence and technical or formal rules of procedure, but may

make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this act.' It is the view of some courts that, in the absence of a statutory provision relaxing the ordinary court rules (and there is none in Maryland), a court, on review, is expected to give the case its usual scrutiny, discriminating as to the evidence received according to its ordinary rules . . . (citations). Wigmore, in a comment on the latter case [*Inland Rubber Co. v. Industrial Commission,* 309 Ill. 43], in 18 Ill. Law Rev. 248, questions the propriety of 'the insistence that every part of the evidence shall be tested by the jury trial rules of admissibility,' although he agrees in the subsequent 'general exercise of the power to review the sufficiency of the evidence' admitted. (And see *Spiegel's House Furnishing Co. v. Industrial Commission,* 288 Ill. 422.) In England, where these statutory proceedings originated, hearsay is admitted only according to the established rule, as to bodily or mental feelings, but not as to their causes. (Citations.) Other courts admit evidence, such as hearsay, which would be excluded in ordinary judicial proceedings, but only within limitations. In New York, where the statutory provision for the relaxation of rules of evidence before the commission is the same as that in the Maryland act, hearsay testimony is received in court reviews, but an award is not permitted to be based on such testimony alone. (Citations.)" (p. 252.)

In *Boyer v. Crawford Bros.,* 279 N. Y. Supp. 546, the headnote states the case and the decision:

"Evidence in compensation proceeding that deceased employee, working alone, had told several different persons that he had dropped a bag of feed on his foot, that deceased employee had exhibited his leg shortly after supposed accident to fellow workman, and evidence of attending physician that deceased employee's injury was traumatic, and that it was a contributing factor to death, held sufficient to show that deceased had suffered an accident, and that death had resulted therefrom."

Other compensation cases, where hearsay evidence of the workman's statements touching his accidental injuries have been accorded probative force, when his death has later ensued therefrom, are *Amer. Furniture Co. v. Graves,* 141 Va. 1, 126 S. E. 213; *Lindquest v. Holler,* 164 N. Y. Supp. 906. (See, also, cases *pro* and *con* on this point in 54-page note in 78 A. L. R. 1232.)

We have not failed to note that the courts are not all of one accord on the admissibility of hearsay evidence in workmen's compensation cases. In *Wise v. State Ind. Acc. Comm.,* 148 Ore. 461, 35 P. 2d 242, the supreme court of Oregon took note of the Maryland supreme court's decision in the Mealey case, but said:

"In view of the provision of the Oregon statute, however, to the effect that a case of this character shall be tried as other civil cases, we do not consider the Maryland case just cited as controlling." (p. 476.)

See, also, *Hillman v. Utah Power & Light Co.*, 56 Idaho 67, 51 P. 2d 703.

In the light of the foregoing cases and the mandate of our own statute (G. S. 1935, 44-523), we think the rule touching the admissibility of hearsay evidence in workmen's compensation cases to be: Where a workman dies of his injuries the statements he had made to third persons touching the accident which caused his injuries may be received and accorded probative force, if such statements are inherently reasonable and not intentionally made for the purpose of being used as evidence to base a claim for compensation, and where the other evidence and attendant circumstances corroborate the statements so convincingly as to establish the fact of the workman's accident and injury with moral certainty.

Tested by this rule, the testimony of the widow was properly received and the appellants' contention that there was not sufficient evidence to support the award and judgment cannot be sustained.

Another contention of the appellants is that the employer was prejudiced because it was not notified of the accident in ten days after it occurred. The fact of prejudice does not appear; and the trial court's findings on the point dispose of this contention completely. They read:

"(20) About six weeks or two months after the accident in April, 1935, Parker informed Cameron orally of the injury to his chest.

. . . . . . . . . . . . . . .

"(22) In January, 1935, or during 'cool weather' Cameron notified Stanley Richards, who was the agent for the insurance carrier herein, of said accident, said notice by Cameron to Richards being verbal.

. . . . . . . . . . . . . . .

"(26) After Parker had notified Cameron of the injury, and also after Cameron had notified the insurance carrier's agent of said injury, neither the respondent nor insurance carrier made any investigation concerning the accident or injury to Parker.

. . . . . . . . . . . . . . .

"(28) The court further finds that [neither] said John M. Parker nor claimant herein gave notice to respondent of the accident within 10 days after the accident and that respondent nor its duly authorized agent had any actual knowledge of said accident until between six weeks and two months after said accident, and the court further finds that the respondent and its insurance carrier, parties hereto, were not prejudiced thereby."

There is nothing in this record to justify further discussion. The judgment is affirmed.