No. 36,081

Benjamin M. Long, *Appellee,* v. Lozier-Broderick and Gordon, and Employers Mutual Liability Insurance Company, *Appellants.*

(147 P. 2d 705)

Opinion

filed April 8, 1944.

*James K. Cubbison,* of Kansas City, argued the cause, and *Blake A. Williamson* and *Lee Vaughan,* both of Kansas City, and *Howard Payne,* of Olathe, were on the briefs for the appellants.

*Joseph Cohen,* of Kansas City, *Clayton Brenner,* of Olathe, and *N. R. Fischer,* of Kansas City, Mo., were on the briefs for the appellee.

The opinion of the court was delivered by

Hoch, J.: This is a workmen's compensation case. An award by the commissioner was affirmed by the district court and the respondent employer and its insurance carrier appeal. The only question is whether there was substantial evidence to support the finding that the accident suffered by the claimant caused or aggravated the defective vision upon which right to compensation was predicated, and that such defect is permanent and of the extent determined by the court.

We first take note of appellee's motion to dismiss the appeal on account of appellants' failure to file a specification of errors as required by Rule 5. The rule is founded on sound reasons and

we again emphasize its importance. However, in view of the instant record the appeal will be considered on its merits. The issues were definitely drawn in the trial court and it is perfectly clear from the briefs of both appellee and appellants that the issue here was mutually understood. As soon as the failure to observe the rule was noted by appellants they had a specification of errors printed and inserted in the abstract.

Benjamin M. Long, the appellee, went to work for Lozier-Broderick & Gordon, appellant, at the Sunflower Ordnance plant as a welder and structural steel worker in July, 1942. Near quitting time on August 1, 1942, as he was passing by a bench where workmen were knocking slag from steel plates, a piece of slag struck him in the left eye. A fellow workman tried to get it out and he thought it was out but the next morning the eye was paining him and he went to the hospital. A doctor there worked at the eye and told him to report again the next morning. At that time the eye was further examined and he was then sent to Doctor Powell, an eye specialist at Lawrence. Doctor Powell treated the eye regularly for five weeks, and was then called into the armed services. Appellee was then sent to Doctor Nelson at Lawrence and five more weeks of treatment followed. At a date not disclosed by the record claim was filed under the workmen's compensation act and hearing held before an examiner on July 7, 1943. At the commencement of the hearing parties agreed that the relationship of employer and employee existed at the time of the accident; that the parties were covered by the act; that the average weekly wage was over $30; that notice had been given to respondent; that the claimant met with the accidental injury alleged and that it arose out of and in the course of employment. Respondent did not at that time admit that written claim had been duly made nor that the amount of compensation claimed, if any, was due. However, appellants now only contend that the "nature and extent of claimant's loss of use of the left eye, if any" is in issue, and both parties appear to interpret this issue to include the question of whether the accident was the cause of the loss of vision.

In addition to the testimony of the claimant the evidence on the present issue consisted of affidavits of three doctors, to which reference will presently be made. Approving the findings of the examiner the commissioner found that the claimant had suffered a a sixty-five and eight-tenths (65.8) percent permanent partial loss of vision of his left eye as a direct result of the accident and made

an award for a period of seventy-two and four-tenths weeks at the rate of eighteen dollars per week. Appeal was taken to the district court, and on November 2, 1943, the findings and award made by the commission were affirmed. This appeal followed.

As frequently stated, the jurisdiction of this court in workmen's compensation cases is specifically limited to questions of law. (G. S. 1935, 44-556; *Brown v. Olson Drilling Co.*, 155 Kan. 230-231, 124 P. 2d 451, and cases there cited.)

No purpose would be served by narrating the evidence except that which bears upon the narrow issue before us. It is not our function to weigh conflicting evidence. Was there substantial evidence to support the findings as to the cause and extent of claimant's loss of vision?

Claimant's eyes had been tested in 1940 by Doctor Mussallem of Macon, Mo. He found the vision at that time to be normal in both eyes, but recommended glasses for reading purposes to relieve any eye strain. On March 19, 1943, he again tested claimant's eyes and found a four-fifths impairment in the left eye. Claimant testified that he had never had any infection in his left eye that he knew of prior to the time he got the slag in it, and that the left eye had suffered no previous injury. In a letter to the claimant dated April 10, 1943, and admitted without objection, Doctor Nelson said:

"In response to your letter I wish to state that my conclusion in regard to your eye is that you were recovering from an attack of uveitis when I first saw you and that you have had some resulting effect on your crystalline lens with a permanent streaking of the lens. This leaves you with a decrease in your vision to 20/150 with very little aid from the use of glasses."

After this letter was introduced counsel for claimant stated to the examiner that there was one "failing" in the medical testimony, in that neither doctor had made a direct statement that the condition of the eye was a direct result of the accident, nor that the foreign object in the eye "aggravated or caused a flare-up of those conditions," and that he might have to "call Doctor Nelson and ask him to send another statement amplifying this statement." Thereafter claimant went to Lawrence and brought back a letter from Doctor Nelson, which was received without objection, in which Doctor Nelson stated: "It is my opinion that a foreign body in the eye may have been the cause of the uveitis with which you were suffering when I first saw you."

We also have the following testimony by the claimant:

"Doctor Nelson examined me and kept close watch on it. He said I had a bad case of some kind of infection and he wanted to watch it pretty close. I think I went every day for three weeks, then after that about two or three times a week. He said it wasn't entirely healed up.

"Q. What did he tell you the slag had done to your eye? A. He said it had caused little scars on the eyeball, the pupil and caused me not to be able to have the vision out of that eye that I should."

Appellants urge that this latter testimony should not be considered because it was hearsay. Appellee contends that hearsay evidence is admissible in a workmen's compensation case, citing *Parker v. Farmers Union*, 146 Kan. 832, 73 P. 2d 1032. It is true that in that case we refused to apply the rigid common-law rule touching the admissibility of hearsay evidence, but the modified rule there stated applies only to cases where the workman had died from his injuries, and where other conditions not necessary to restate here are present (see *Parker v. Farmers Union*, supra, p. 840). However, it is not necessary to determine here whether the hearsay rule should be further relaxed to permit the admission, over objection, of the instant testimony. The record does not disclose that objection was made at the time and the evidence was entitled, the same as any other evidence, to such weight as the trial court might give to it. (71 C. J. 1149.) As to this evidence appellants also contend that appellee's narration of what Doctor Nelson told him was not corroborated by Doctor Nelson's letter. It is true that the letter does not recite that the statements were made as reported by the claimant but it cannot be said, we think, that the letter is clearly inconsistent with the claimant's testimony. In any event such questions were for the trial court to pass upon. It may also be well to note at this point that we are not here dealing with the question of whether hearsay evidence alone is sufficient to establish causality in a compensation case. There is present here the other testimony as narrated.

Appellants' principal contention is that the statement of Doctor Nelson that the slag in the eye *"may have been the cause of the uveitis"* (italics supplied) is insufficient to establish causal connection. If that statement by Doctor Nelson were the only evidence it might well be urged that the judgment should not stand, being based upon evidence conjectural in character. We agree with appellants that *Son v. Eagle Picher M. & S. Co.*, 144 Kan. 146, 58 P. 2d 44, which is one of the cases principally relied upon by appellee, does

not rest upon a mere statement that the accident there involved *may* have caused the injury. In that case, although the medical testimony was otherwise weak in the matter of establishing causal connection the doctor did, at one point, make the unqualified statement that "the injury was the beginning of the trouble."

Cases more helpful to appellee's cause are *Vera v. Swift & Co.*, 143 Kan. 593, 56 P. 2d 96, and *Smith v. Cudahy Packing Co.*, 145 Kan. 36, 64 P. 2d 582. In the Vera case the employee died from a streptococcic infection. No abrasion of the skin or other "port of entry" for the infection was shown to have resulted from any accident while at work for the employer. Such an abrasion, however, had resulted from a fall from a ladder at home about twelve days before the employee quit work at the plant and went home sick. A compensation award, upheld by this court, was based upon the theory that shock, sustained by the employee the day he last worked at the plant, when an elevator he was operating descended out of control several stories to the bottom of the elevator pit and rebounded a foot and a half, aggravated the infection then present in his body and contributed to his death. One doctor testified that such a shock could lower resistance so that if an infective organism were present it would enhance activity of the organism. Another doctor testified as follows:

"Q. So that it is your opinion, if I understand you correctly, that this fall that Juan Vera sustained at Swift & Company's plant on the 27th day of July, 1933, could have activated or aggravated a preëxisting streptococcic infection that was within the body? A. I think it is possible."

He testified further, however, that in his opinion the fall with the elevator did not have that effect. Another doctor testified as follows:

"Q. Would a fall such as described to you, six or eight floors, have a tendency to aggravate or light that thing up and make it flare up? A. Yes.

"Q. It would? A. Yes.

"Q. In other words the streptococcic infection might be lying dormant? A. Yes, sir.

"Q. And this trauma which I have described might have lighted it and flared it up? A. Yes." (p. 602.)

It will be noted that in the Vera case there was no positive medical opinion that the elevator fall contributed to the employee's death nor even that it *probably* did so. The testimony only was that such a fall *could* lower resistance and enhance the activity of an infective germ, if present, or that the fall *might* have caused the in-

fection to flare up, or that it was *possible* that the fall activated or aggravated a preëxisting infection. But this court said that considering all the circumstances of the case it did not feel justified in saying that there was no substantial evidence to sustain the finding of the trial court.

In the Smith case, *supra*, in which three justices dissented, the claimant, while at work as a cattle butcher for a meat packing company, received a small cut or skin wound on his right arm. The wound was treated and about a week later had entirely healed. Several days later he developed ringworm on his right leg. In answer to a hypothetical question as to whether it was possible that the claimant could have gotten the infection into his system by allowing hides from infected cattle to slip over the cut on the arm, one doctor answered, "He certainly could." To a similar question another doctor answered "It would be possible," although he testified that ringworm is a local and not a systemic infection. There was no other medical evidence. In affirming the judgment it was said in the opinion:

"The majority of the court regard this evidence as proof of more than possibility the infection resulted from the wound. The evidence made certain the possibility of contracting the disease and practically eliminated every other source of infection than infection arising out of and in the course of employment." (p. 39.)

The evidence in the instant case, including the claimant's testimony—unobjected to—as to what the eye specialist told him, is stronger than the supporting evidence in either the Vera or Smith cases, *supra*. (Although not directly in point, but as bearing upon the question of whether facts as to physical disabilities may be established only by medical testimony, see *Cowan v. Kerford Quarry Co.*, 146 Kan. 682, 684, 72 P. 2d 999; *Hardwell v. St. Louis S. & R. Co.*, 146 Kan. 870, 876, 73 P. 2d 1120; *Bull v. Patti Const. Co.*, 152 Kan. 618, 106 P. 2d 690.)

We now note appellants' contention that there was no evidence to support a finding that the defective vision is permanent or of the degree found by the trial court. Having passed the question of causal connection we find no difficulty about these findings. Claimant testified that Doctor Nelson told him the infection "was liable to reappear at any time within a period of ten years and that the ball might have to be taken out," and that "I understood it was possible, from the injury, for it to reappear if it was ever injured again and I might lose my eyeball, was the way I understood it." In Doctor

Nelson's letter, heretofore set out, he reported "a permanent streaking of the lens" which "leaves you with a decrease in your vision to 20/150 with very little aid from the use of glasses." And although Doctor Small, respondent's witness, rejected the theory that the slag could have caused the eye condition his report clearly indicates a conclusion that it is permanent in character.

As to the finding of a sixty-five and eight-tenths loss of vision in the left eye, that was Doctor Small's testimony. The other two doctors who gave an opinion on the question fixed the loss of vision at a still higher percentage.

Our question is one of law only. Reviewing all the evidence and considering all the facts and circumstances in the light most favorable to the claimant as we are enjoined to do both by the statute and the rule often reiterated we conclude that there was evidence to support the findings and judgment.

The judgment is affirmed.