No. 36,145

DORRIS WOODFILL (Widow of Vernon Woodfill, Deceased), *Appellee,*
v. LOZIER-BRODERICK & GORDON, and EMPLOYERS MUTUAL LIA-
BILITY INSURANCE COMPANY, *Appellants.*

(149 P. 2d 620)

Opinion
filed June 10, 1944.

*James K. Cubbison,* of Kansas City, argued the cause, and *Blake A. Wil-
liamson* and *Lee Vaughan,* both of Kansas City, and *Howard Payne,* of Olathe,
were on the briefs for the appellants.

*Patrick W. Croker,* of Kansas City, argued the cause, and *George H. West,*
of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is a workmen's compensation case. The
question for our review is whether plaintiff's husband died of an
industrial accident in his employer's service or of a fall which re-
sulted from an epileptic seizure in no way related to his employment.

The pertinent facts were these: On March 26, 1943, and for some
time prior thereto Vernon Woodfill had been employed by the re-
spondents as a motor mechanic at the Sunflower Ordnance Plant,
at Eudora. In the forenoon of that day Woodfill had repaired a
motor and set it to running. At noon he climbed on a near-by bin
about six feet high, and sat down to eat his lunch, where he could
watch how the running motor performed. Several of his fellow
workmen were also seated at various places in the same workshop,
likewise eating their lunches. About fifteen minutes after Woodfill
sat down on the bin, he was seen to look up, draw his head around
to the right and fall off the bin; his head hit the concrete floor, and
his skull fractured. When his fellow workmen attempted to lift him
it was discovered that he was unconscious and there was a bloody
discharge from his right ear. Attempt was made to resuscitate him

by artificial respiration. An ambulance arrived in a few minutes and he was taken to a hospital where he died in two days without regaining consciousness.

A claim for compensation was filed by Woodfill's widow. After an extended hearing the commissioner of compensation allowed the claim, and on appeal the trial court affirmed the award, upon a finding that—

"The said deceased suffered from the effects of the gas which was emitted from the exhaust of said engine which had recently been repaired in said room, and which had been left running up to the time the deceased fell, and as the direct and proximate result thereof, he died on March 28, 1943."

The employers appeal, contending that there was no substantial evidence that Woodfill's death resulted from an accidental injury arising out of and in the course of his employment. There was indeed considerable evidence (which was not disputed) that Woodfill had been periodically afflicted with recurring epileptic seizures for several years past, and that he was accustomed to take medicine systematically to avert or minimize their intensity. Expert witnesses for respondents delineated the symptoms of epileptic seizure from its preliminary "aura" when the afflicted person may have some sensory disturbances, light flashes in his eyes, tingling in his hands, feet, or any part of the body. Unconsciousness then ensues, which is followed by a "tonic" condition of tenseness or rigidity of the body. In turn this is succeeded by a "clonic" violent and convulsive jerking of the body or limbs; and finally the sufferer relaxes into an exhausted sleep which may last several hours. One of respondents' expert witnesses testified that the symptoms thus summarized were unmistakable.

What little direct evidence there was which tended to show that Woodfill's fall to the cement floor with its fatal consequence might have been caused by an epileptic seizure was given by a fellow workman, who testified:

"I was sitting about 30 or 40 feet from him when he fell. . . . There was another man at the side of me and we mentioned Woody's motor running there and he was up on this bin watching it run during the noon hour, . . . We were admiring how good he was on GM Diesel motors, and I would say between 10 and 15 minutes after 12 I saw him look up and back to the ceiling. I just looked up and thought maybe he was looking at something, and his head was in motion, like a jerk, quiver, or something. . . . I saw him start over to his left side and I jumped and ran over there and he fell before I got there. When I got there he was lying on the floor. . . . He lay perfectly still there on the floor."

What little evidence there was to support the trial court's finding that Woodfill's fall with its fatal consequence was caused by gas fumes from the exhaust of the motor he was watching as he ate his lunch was to this effect:

There was testimony that the doors of the workroom were closed while the motor was running; the motor was giving off a lot of smoke and gas fumes; such fumes frequently cause headaches, a smarting of the eyes, and cause a workman to feel "dopey;" that after Woodfill's accident, motors which were being tested after overhauling were operated out of doors.

There was also considerable testimony that after Woodfill fell his body and limbs were not rigid but limp, showing none of the "tonic" and "clonic" symptoms which invariably develop in sequence in cases of epileptic seizure. It was suggested by a medical expert that since Woodfill's fall cracked his skull, it was probable that this greater mishap "masked" the nervous tissues which ordinarily control the tenseness or rigidity and convulsions which attend epilepsy, and explained their nonappearance.

While the record on this vital question is long, and the testimony is both interesting and instructive, it all comes down to this: Was there an entire want of evidence to support the trial court's finding that the workman's fall and consequent death was caused by an accident which arose out of and in the course of his employment? We cannot say so. This court has neither duty nor authority to weigh the evidence. (*Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 624, 7 P. 2d 70.) It is of no consequence that if we were triers of fact we might hold that the case falls within the rule of *Cox v. Refining Co.*, 108 Kan. 320, 195 Pac. 863, and later cases of that sort. We do hold that the evidence which the trial court, as paramount trier of the facts, chose to believe was sufficient to support its findings. (*Carney v. Hellar*, 155 Kan. 674, 127 P. 2d 496, and citations; *Long v. Lozier-Broderick & Gordon*, 158 Kan. 400, 147 P. 2d 705, and citations.)

The judgment is affirmed.