No. 36,461

James F. Burk, *Appellee*, v. American District Telegraph Company, *Appellant*.

(163 P. 2d 402)

Opinion filed November 10, 1945.

*Joseph G. Carey*, of Wichita, argued the cause, and *W. F. Lilleston, George C. Spradling, Henry V. Gott* and *Ralph M. Hope*, all of Wichita, were on the briefs for the appellant.

*Lee R. Meador*, of Wichita, argued the cause for the appellee.

The opinion of the court was delivered by

Parker, J.: In this workmen's compensation case an award was denied by the commissioner. The claimant appealed to the district court. There he was successful. The award and judgment was permanent disability with payments at the rate of $18 per week for a period not to exceed 415 weeks. The employer appeals.

Pertinent issues in the proceedings below are disclosed and can best be stated by quoting a stipulation entered into between the parties. It reads:

"It is stipulated and agreed by and between the parties that·on October 27, 1944, that respondent was operating under the Workmen's Compensation Act, and has no insurance; that claimant was in its employ at an average weekly wage of $31.20; and that notice was had and claim made within the statutory period. It is agreed that the remaining questions in issue are whether or not the claimant sustained personal injury by accident arising out of and in the course of the employment; the nature and extent of the disability; and the amount of compensation due, if any."

Perhaps unnecessary, except for the enlightenment of future readers of this opinion is a brief résumé of the events and circumstances leading up to the occurrence relied upon by claimant as the basis for his claim.

The evidence discloses that on October 27, 1944, the claimant was employed by the respondent as a guard operator; that at the time he was sixty-two years of age and weighed approximately 210 pounds; that prior to his employment in January, 1944, he had taken a preëmployment physical examination; that his duties were to watch the board for one hour and to be off the next hour but to remain within call so that in case of emergency he would be available; that between four and five o'clock in the morning of October 27, 1944, was his hour off the board, and he went in a room close by, which at one time had been rented by the Western Union to respondent, but since June, 1944, has not been occupied by it or any of its equipment; that the respondent company is controlled by the Western Union and the operating facilities of both are housed in the same building; that respondent's employees had not been told not to go in the room during the hour off the board, and that some of them went in there and read; that while the claimant was in this room he was sitting in a chair with rollers and had his feet on the desk and was reading a newspaper; that about four-twenty o'clock he reached to pull the chair closer to the desk and it slipped out from under him and he fell backward on the cement floor; that he did not strike his head and was not unconscious; that he got up and sat in the chair for a little while; that he felt pretty badly shaken up, and jarred all over; that at five o'clock he went back on the board and shortly thereafter he could not reach up to mark the tape; that he could not get his arm up there because it was weak; that he stayed on the board fifteen or twenty minutes and

after talking to his fellow workman drove his car home and went upstairs; that he had difficulty getting up the stairs because his right hand, arm, and leg were not properly coördinating; that he continued to lose the use of the arm and leg; that Doctor Padfield was called and he was sent to St. Joseph's hospital, where he remained until November 6, 1944; that since such date he has been unable to use his right arm or his right leg, cannot walk, and is totally disabled.

Since the rendition of the judgment in district court the issues have been further simplified. On this appeal the appellant concedes the alleged accident occurred in the course of employment, that appellee is totally and permanently disabled, and if such accident occurred and resulted in disability the amount of compensation was correctly computed by the trial court. It frankly states the only question presented here for review is whether the injury to the appellee arose "out of employment."

Embodied in the main issue as stated by appellant are two questions, which if it cannot be said they have been abandoned it most certainly can be stated they are not seriously urged as grounds for reversal of the judgment. They are (1) the accident did not occur, and (2) if it did, it happened on premises controlled by the Western Union and where the appellee had no right to be. Treating these questions as unabandoned and assuming appellant's reference to them is intended as a contention that if its position on either is upheld then, and in that event, appellee's disability did not arise out of his employment we have no difficulty in disposing of them. As to the first, appellee's testimony that he experienced a fall in the manner and form heretofore related was clear, positive and undisputed. With respect to the second, the record discloses ample evidence to justify the conclusion that at the time of the accident appellee was on duty and in a room used by appellant's employees with its knowledge, acquiescence and consent. With the record in this state, under the well-established rule to which we shall later make reference, this court cannot say the trial court erred, either in its conclusion the accident occurred or that appellee was in a place where he had a right to be at the moment of its occurrence.

We turn now to consideration of the principal ground relied on by appellant as error. Abstractly stated, it is that appellee did not sustain the burden of establishing by substantial, competent

evidence his injury arose out of his employment. Its position on this point is founded, and when analyzed its entire argument is based, upon the theory that on the date and at the moment in question appellee suffered a stroke of apoplexy caused by a cerebral hemorrhage or thrombosis and resulting in hemiplegia, which in the language of laymen simply means a paralysis of the muscles on one side of the body; that the fall from the chair and resulting injury was merely a coincidence and that appellee's disability would have resulted irrespective of, and notwithstanding, its occurrence.

In our approach to consideration of appellant's argument as well as the ultimate disposition of its contention it becomes immediately apparent an examination of the testimony of medical experts, to which we have heretofore purposely made no reference, is required. As we proceed with that examination, it should at the outset be stated, we will not attempt to detail all the evidence supporting appellant's claim the appellee's disability was not the result of the accident, which as we have heretofore determined must for purposes of review be considered as having occurred. Under our decisions we have neither duty nor authority to weigh the evidence and are concerned only with such testimony as supports or tends to support the findings and judgment of the trial court. Our jurisdiction is specifically limited to questions of law (G. S. 1935, 44-556). Once that testimony has been ascertained our only function is to determine whether it is competent and substantial in character. If it is, the trial court's decision that the injury is compensable must be upheld. It is not for us to speculate as to whether there was other evidence which might have warranted a contrary decision. This is true even though such evidence might lead us to a different conclusion if we were the triers of fact. That the principles just enunciated are well grounded in this jurisdiction and are no longer open to argument or debate is evidenced by a long line of uniform cases (see *Holler v. Dickey Clay Mfg. Co.,* 157 Kan. 355, 362, 139 P. 2d 846, and earlier cases there cited). For more recent decisions of like effect, see *Carrington v. British American Oil Producing Co.,* 157 Kan. 101, 105, 138 P. 2d 463; *Goss v. McJunkin Flying Service,* 157 Kan. 684, 143 P. 2d 659; *Thompson v. Swenson Construction Co.,* 158 Kan. 49, 56, 145 P. 2d 166; *Long v. Lozier-Broderick & Gordon,* 158 Kan. 400, 402, 147 P. 2d 705; *Murphy v. I. C. U. Const. Co.,* 158 Kan. 541, 542,

148 P. 2d 771; *Woodfill v. Lozier-Broderick & Gordon*, 158 Kan. 703, 705, 149 P. 2d 620; *Hall v. Kornfeld-Harper Well Servicing Co.*, 159 Kan. 70, 74, 151 P. 2d 688 and *Stanley v. United Iron Works Co.*, 160 Kan. 243, 160 P. 2d 708.

With applicable rules determined we now detail the medical experts' testimony of record which supports or tends to support the trial court's award.

In passing, we note that all witnesses hereinafter referred to were physicians and surgeons whose qualifications to testify as medical experts were admitted by the respective parties.

Dr. R. E. Padfield was the only expert witness who testified on behalf of the claimant appellee. During the course of his direct examination the following questions were asked and answers were made:

"Q. Doctor, did you attend James F. Burk on October 27, 1944? A. Yes, sir.

"Q. Do you know what was wrong with him at that time? A. Yes, he had a stroke of apoplexy, or hemorrhage of the brain, hemiplegia, he was paralyzed on one side.

"Q. Which side? A. The right side.

"Q. Doctor, the evidence in this case has disclosed that James F. Burk, on the early morning of October 27, was sitting in a chair which had casters under it. It was on a cement floor, or hard surface floor; that in shifting his weight in that chair, the chair slipped out from under him, rearwardly, and dropped him to the floor heavily. This man weighs approximately 210 pounds; that approximately forty-five minutes thereafter, he ·began to feel a numbness in his right side and loss of coördination of his right hand; and that he went home with that condition increasing. It was difficult for him to get upstairs, and you saw him at noon, with the entire right side of his body paralyzed? A. Yes.

"Q. From those facts, do you have an opinion as to whether or not the fall was the proximate and producing cause of his physical condition at the time you saw him? A. I do.

"Q. And what is that opinion? A. I think that was the exciting cause of his paralysis.

"Q. Just how do you deduce that opinion from those facts? A. Well, he had the fall and this developed later; you can say immediately following— and it apparently was coming on slowly, and he developed the paralysis. The paralysis is, as you probably know, and as I will state, is caused by some circulation or pressure in the brain, circulatory disturbance, or pressure in the brain, where the blood supply has been shut off by a clot or thrombosis or slow hemorrhage in the brain, and it was my opinion that that caused his condition as I found him.

"Q. That jar? A. Yes.

"Q. And hurt his brain in that respect? A. Yes.

"Q. Now, Doctor, do you have an opinion as to how long this condition will continue to exist? A. Yes, I do.

"Q. And what is that opinion? A. I don't believe he will get well.

"Q. In other words, he is permanently and totally paralyzed on his right side? A. I think so."

On cross-examination of this witness we find questions and answers as follows:

"Q. You say Mr. Burk had a brain apoplexy, you say he had a hemorrhage? A. Yes.

"Q. A brain apoplexy, cerebral? A. Yes, he had a hemorrhage there that, in my opinion, caused this paralysis.

.   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Hemorrhage or cerebral apoplexy? A. Yes, it could be that. There are several different classifications of that, of course, but that is the general concensus of the opinion that it could be in the pons or ventricula or meninges, but it is classified as a cerebral hemorrhage. That was undoubtedly the cause of his paralysis."

The following questions and answers appear as a part of the cross-examination of Dr. Carl Burkhead, an expert witness for the appellant:

"Q. We had a case once where a man was standing on a saw-horse sawing a cornice over his head, and he dropped dead from a stroke of apoplexy. Now, the physicians testified that the increase in blood pressure due to his efforts caused the stroke. How does this case differ from that one? A. Well, that is one of the arguments that the other side has. I don't think it does. That is the reason I quoted the literature. I don't think that makes any difference, because a lot of these things happen at night when the blood pressure is lower."

Some of the questions asked Dr. E. H. Terrill, a neutral examining physician who stated the appellee at the time of the trial was suffering from thrombosis and not a hemorrhage, and the answers made thereto by him are:

"Q. Doctor, is it probable that the accident activated an existing condition, which may have caused or had something to do with his present disability? A. Well, yes, but when, as I say, when we consider the nature of the processes that occur there, it doesn't seem reasonable to me to expect that a thing like that would do it. There isn't anything that would occur under those circumstances that I can see that would lead to any substantial change there.

"Q. Either by way of direct cause or aggravation? A. No, I don't believe so.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. Now, on the other hand, if it was a hemorrhage, would that have anything to do with it? A. If he got a high enough rise in pressure, yes, but I think it happened too quickly to be from that sort of cause."

Appellant contends the evidence which we have just related is vague, conjectural and unsatisfactory. We cannot agree. Reference to it immediately discloses that so far as Doctor Padfield is concerned it is clear, definite and substantial. It further reveals there is no unanimity of opinion among medical experts on the subject. True enough, awards cannot be based upon evidence which is purely conjectural and speculative, but there is no room for application of that rule where, as here, it can be said the award is fairly based upon evidence which if believed is clear and convincing. Appellant insists the medical testimony overwhelmingly supports its position. Perhaps so, in number of witnesses, but that is not the test. Boiled down the gist of its contention is that this court should weigh the evidence. The answer to its argument is well stated in the early case of *Bortnick v. Cudahy Packing Co.*, 119 Kan. 864, 866, 241 Pac. 442, wherein this court said:

". . . Counsel for appellant admit their familiarity with the appellate practice in this court, that a court of appellate review is not a fact-finding tribunal; but they assume that we can go far enough into the evidence to determine where its 'great preponderance' lies, and they argue that where the preponderance of the evidence is very great, as they assume it to be in this case, in favor of appellant, this court should disregard the facts ascertained by the trial court and enter judgment on the facts as we ascertain them to be. That cannot be done. (*Agricultural Ins. Co. v. Aetna Ins. Co.*, 119 Kan. 452, 457-461, 239 Pac. 974)." (p. 866.)

Besides this court has, since the date of the rendition of the decision from which we have just quoted, repeatedly held the determination of whether an award is supported by substantial evidence depends not upon the preponderance of the evidence or the greater number of witnesses but upon that evidence which, if competent and substantial, the trial court sees fit to believe (*Carney v. Hellar*, 155 Kan. 674, 127 P. 2d 496 and *Woodfill v. Lozier-Broderick & Gordon*, supra, and *Hall v. Kornfeld-Harper Well Servicing Co.*, supra).

In conclusion we note a final contention that we should not lose sight of the fact the workmen's compensation commissioner's examiner had the opportunity to observe the witnesses, appraise their qualifications and credibility and determine the weight to be given their evidence, while the district court did not have that opportunity, but based its decision upon the bare record. We need not debate

that issue. By legislative sanction (G. S. 1935, 44-556) the district court has "jurisdiction to grant or refuse compensation, or to increase or diminish any award of the commission as justice may require." Included in that grant is the right to weigh the evidence in compensation cases. Until that power is taken from the trial court by the source from which it sprang contentions of such character are of no avail.

The judgment is affirmed.