No. 36,971

WILLIAM L. WALKER (Claimant), *Appellee*, v. ARROW WELL SERVICING COMPANY (Respondent) and ST. PAUL MERCURY INDEMNITY COMPANY (Insurance Carrier), *Appellants*.

(186 P. 2d 104)

ROY J. McMULLEN, judge. Opinion filed November 8, 1947.

*Wayne Coulson*, of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Paul R. Kitch, Manford Holly*, and *Dale M. Stucky*, all of Wichita, were on the briefs for the appellants.

*Georgia E. Wells*, of Lyons, argued the cause for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was a workmen's compensation case. The

workman filed a claim for compensation for personal injuries, and also filed a petition to set aside a final receipt and release executed by him, on the ground of mutual mistake. The matter was set for hearing before the compensation commissioner on October 18, 1946. At this time claimant appeared without an attorney. Answering questions asked him by the commissioner he stated that he could not read or write and had no schooling further than the third grade; that on November 18, 1945, he was working for respondent as a roustabout; that his job was pulling rods and tubing and almost anything there was to do around an oil well; that "I was lifting on a drill stem, when there was a severe pain hit me in the back, and I was unable to straighten up, back and hips"; that he went back to work sometime between the 5th and 8th of January, 1946, but was unable to do anything but light work; that he stayed on the job until February 26, when his thumb was broken and he had to lay off for a time; that he then went back to see if he could go to work and was told that he was not needed. The answers to some of the questions asked him by the commissioner and by counsel for respondent were somewhat confused and tended to be contradictory. Obviously, part of that arose from the fact that claimant did not fully understand some of the questions. The commissioner concluded that claimant could not well present his own case, suggested that he get an attorney and that the hearing be held later. To this claimant agreed. The hearing was resumed before the compensation commissioner on December 20, 1946, plaintiff appearing with his attorney and respondent and the insurance carrier appearing by their counsel. The parties stipulated:

". . . that they were governed by the Kansas workmen's compensation law; that the insurance carrier for the employer is The St. Paul Mercury Indemnity Company; that the claimant met with an accidental injury which arose out of and in the course of his employment with this respondent on November 18, 1945; that the relationship of employer and employee existed at the time of the alleged accidental injury; that respondent had notice of such accidental injury; that written claim for compensation was served as required by law; that compensation in the amount of $74.52 has been paid; that medical and hospital expense has been furnished in the amount of $52.50."

The questions at issue were the nature and extent of the injury and disability, the amount of compensation to be paid, if any, and the average weekly wage. Respondent offered to agree to an average weekly wage of $60, and that offer was accepted.

After hearing the evidence the commissioner set aside the final

receipt· and release and rendered an award to claimant for total permanent disability, subject to review and modification as provided by law. Respondent and his insurance carrier appealed to the district court, where, after a hearing, the court held:

". . . that the evidence sustains the award made by·the commissioner, and the findings and award made by the commissioner are by this court confirmed and approved, and the court adopts the findings of the commissioner as the findings of the court . . ."

Respondent and its insurance carrier have appealed and contend (1) the evidence is insufficient to justify the cancellation of the release, and (2) the evidence is insufficient to sustain a finding that claimant's disability resulted from the accident of November 18, 1945.

The questions thus raised are regarded as questions of law under G. S. 1935, 44-556. (See *Smith v. Cudahy Packing Co.*, 145 Kan. 36, 64 P. 2d 582; *Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, syl. ¶ 5, 139 P. 2d 846; 148 A. L. R. 1131, and cases cited therein.) In considering the legal questions thus presented this court does not weigh the evidence.· It examines the evidence only to see whether it contains sufficient to support the judgment of the trial court, and in doing so it looks to evidence to support the judgment, disregarding the evidence tending to the contrary.

In *Shay v. Hill*, 133 Kan. 157, 299 Pac. 263, the court held: .

" . . . this court may not review the evidence as the district court did, and determine the nature of the relation between the employer and the deceased. The function of this court is limited to determining if there was evidence, whether opposed or not, warranting a reasonable inference, although a contrary inference might reasonably be drawn, to sustain the judgment of the district court."

This holding has been adhered to consistently in our subsequent decisions. In *Burk v. American Dist. Tel. Co.*, 160 Kan. 519, 163 P. 2d 402, it was said:

"Under our decisions we have neither duty nor authority to weigh the evidence and are concerned only with such testimony as supports or tends to support the findings and judgment of the trial court. Our jurisdiction is specifically limited to questions of law (G. S. 1935, 44-556). Once that testimony has been ascertained our only function is to determine whether it is competent and substantial in character. If it is, the trial court's decision that the injury is compensable must be upheld. It is not for us to speculate as to whether· there was other evidence which might have warranted a contrary decision. This is true even though such evidence might lead us to a different conclusion if we were the triers of fact. That the principles just enunciated are well

grounded in this jurisdiction and are no longer open to argument or debate is evidenced by a long line of uniform cases (see *Holler v. Dickey Clay Mfg. Co.,* 157 Kan. 355, 362, 139 P. 2d 846, and earlier cases there cited). For more recent decisions of like effect, see *Carrington v. British American Oil Producing Co.,* 157 Kan. 101, 105, 138 P. 2d 463; *Goss v. McJunkin Flying Service,* 157 Kan. 684, 143 P. 2d 659; *Thompson v. Swenson Construction Co.,* 158 Kan. 49, 56, 145 P. 2d 166; *Long v. Lozier-Broderick & Gordon,* 158 Kan. 400, 402, 147 P. 2d 705; *Murphy v. I. C. U. Const. Co.,* 158 Kan. 541, 542, 148 P. 2d 771; *Woodfill v. Lozier-Broderick & Gordon,* 158 Kan. 703, 705, 149 P. 2d 620; *Hall v. Kornfeld-Harper Well Servicing Co.,* 159 Kan. 70, 74, 151 P. 2d 688, and *Stanley v. United Iron Works Co.,* 160 Kan. 243, 160 P. 2d 708." (p. 522)

Viewed in the light of the above authorities the pertinent evidence in this case may be summarized as follows: Claimant, 35 years of age and illiterate, was working as a roustabout in oil-field work, which consisted of servicing oil wells, pulling the drilling tools and casings, and doing whatever was necessary to be done in that connection. In September, 1943, he was riding in a truck when one of the truck wheels broke, the truck rolled over on its side and caught fire, burning both of plaintiff's hands, hurting his shoulders and left chest walls. Doctor Leonard, who treated him at that time, made the following diagnosis:

"Second degree burns, tip of second, third and fourth digits, right hand, and mild burn of the left hand, and contusion of back and left shoulder."

After that injury he wore a light belt, for what length of time is not shown. It is not disclosed by the abstract whether any claim for compensation was made for those injuries, or for whom, if anyone, claimant was then working. He did return to work with respondent in November, 1943, and appears to have worked steadily until November 18, 1945, except that in April, 1945, he suffered what he described as a slight strain in his back, which laid him off for two or three days. No claim for compensation was made for that injury, and he paid his own doctor bill. On November 18, 1945, at about 2:00 o'clock p. m., he and three other workmen were lifting a drill bit, which he estimated weighed as much as a thousand pounds. He felt a severe pain in his back and fell down and had difficulty getting up. In some way he got to his home. His wife testified: "Well, he was down in bed, and couldn't get up." How long that continued is not disclosed. On November 24 he saw Doctor Leonard. His diagnosis at that time was sacroiliac sprain, and he reported that the probable length of the disability would be a few days. Claimant went to the doctor's office along through No-

vember and December and the doctor gave him some heat treatments. On December 26, the doctor released him for work. The doctor testified:

"He has been at the office and I have talked to him about his back several times afterwards, but I never examined him."

The doctor saw him again on January 5, and apparently everything was going along all right. The claimant testified that the doctor released him only for light work, that he knew he was not able to go back to heavy work at that time.

". . . but I felt like I should try to do something, I couldn't live on $18 a week, and I figured if I could do light work I could do a better job of supporting my family."

Apparently respondent put him on the pay roll again as of December 26, but he testified he did not actually go to work until about the 6th of January. Respondent had been paying compensation, and on January 2 Mr. Norton, apparently respondent's foreman, took the claimant an instrument, which he told him was a release. He did not read it to claimant nor further explain what it was. Claimant could not read it and did not understand it. He thought it was a permit for him to return to work. It was a lengthy instrument which, with the physician's report attached, covers five pages of the abstract. It contained a receipt for $38.52, making with the payment previously received the sum of $74.52 in final receipt and release of liability. Claimant took it to the bank in Chase, signed and acknowledged it before a notary public and it was returned to the employer by mail. When plaintiff returned to work about January 6 he was still suffering pain, but undertook to do his work. On the third day after he went to work for respondent he suffered unusual pain. He did not regard this as an additional hurt, but simply an increased pain from the hurt received on November 18. He testified that the other men of the crew did the heavy work and let him do the light work. In this he was corroborated by one of the workmen, who testified:

"Q. Did he do the light work or did he do just the regular work again? A. Well, he didn't do hardly anything, because he was not able to do it. . . . We let him do things that he could do; and what he couldn't we done."

He continued this work until February 26, when he was handling some large wrenches and one of them slipped in such a way that it broke the bone of his thumb. He quit to have that set and to per-

mit it to get well. All of that time the disability from his injury of November 18 continued, and increased. He went back to Mr. Norton in April to talk about going back to work and was told that they had no place for him. Later X rays were taken by Doctor Gill and he was examined by Doctor Jarrott, who testified as follows:

"The patient was complaining of pain in the dorsal area of the back, the lumbosacral area, sciatic radiation down the posterior aspects of the thighs, particularly on the right. Physical examination revealed moderate to severe lumbosacral findings, with a pelvic tilt to the right, severe lumbosacral muscle spasm, limitation of motion of the straight leg raising on the right at 30 degrees. There was no atrophy in either extremity. X-rays taken by Dr. Gill and brought by the patient to the office, Exhibits B, C, and D, revealed a slight compression of the fourth lumbar vertebra anteriorly, a large, soft arthritic spur in the anterior superior edge of the fifth lumbar vertebra, a marked narrowing of the lumbo-sacral joint posteriorly, with approximately one-fourth reverse spondylolisthesis. The posterior edge of the superior sacrum impinges on the lower edge of the fifth lumbar vertebra. *His diagnosis, strain, chronic, lumbo-sacral joint, severe.* . . ." (Emphasis supplied.)

Claimant testified that he had done no work since February 26, 1946; that he was in constant pain and unable to do any work. No contention was made in the hearing before the commissioner or the trial court, and none is made here, that claimant was not correctly classified as being totally and permanently disabled for performing labor; hence, we need not further detail the medical evidence. With respect to the release the commissioner found:

"The man does have the appearance of a very honest workman. He is only thirty-five years old, and he was making excellent money prior to the time of his accident, and it would certainly appear he would rather be making the salary he was making than be on pay of $18 per week under workmen's compensation. He testified that he received the settlement agreement and release in the United States mail and he thought it was an authorization for him to return to work, so he signed the same before a notary public without having it read to him, and he returned it to the company without any argument. He also testified that he could not write except for signing his name and that he could not read; that he had very little education. Under these circumstances and in view of the fact this man has done no work of any kind from February 26 to the time of trial, December 20, 1946, it is found that there was a mistake as to the nature of his injury and the settlement agreement, final receipt and release of liability executed on January 2, 1946, is hereby set aside."

The commissioner further found:

"In view of the findings of Drs. Gill and Jarrott it is found that claimant is now wholly disabled by reason of his accidental injury of November 18, 1945, . . ."

These findings were approved by the trial court and the trial court made the further finding of the extent of his injuries as follows:

". . . that claimant and respondent and insurer entered into a stipulation that claimant met with an accidental injury which arose out of and in the course of his employment with respondent on November 18, 1945; that although there was testimony introduced which showed that claimant had a weak back before November 18, 1945, there was undisputed evidence that claimant had been performing his work satisfactorily, and getting paid for it, prior to November 18, 1945; that there is undisputed evidence that claimant now is permanently disabled from performing the heavy work he did prior to November 18, 1945, and that because of claimant's lack of education he is prevented from performing anything except heavy manual labor."

We think from the evidence the court was justified in setting aside the final receipt and release. Doctor Leonard, when he examined claimant on November 24, reported to respondent "that the probable length of the disability would be a few days," yet he treated claimant for about a month before he permitted him to go to work at all, and during that time made no further examination of him. Claimant knew he was not able to do the heavy work, but there is no evidence that he knew any more about the extent of his physical injury than the doctor knew, and as we have seen, he was obviously mistaken. More than that, it is clear that the release was not understandingly executed by the claimant, and the amount paid for release was grossly inadequate. We think there is no necessity of making an extensive review of the authorities. Counsel both for appellants and appellee cite authorities to the effect that when both parties were mistaken as to the extent of the injury at the time the release was executed the court may properly set it aside.

Claimant based his claim for compensation upon the injury of November 18, 1945. Counsel for appellants do not contend that there was no substantial, competent evidence to sustain the trial court's finding that claimant is totally incapacitated. The claim is that the evidence does not justify the finding of the trial court that his present incapacity resulted from the injury of November 18, 1945. In doing so counsel point to the injury of April, 1943, when claimant strained his back and laid off from work for two or three days. We think the court was justified in concluding that these injuries no more than demonstrated that perhaps claimant's back was not as strong as it should have been to justify him in doing the

heavy portion of his work. That situation, of course, would not defeat claimant. The compensation law does not require the workman to have been perfect physically. (See *Blackburn v. Brick & Tile Co.*, 107 Kan. 722, 726, 193 Pac. 351; *Williams v. Cities Service Gas Co.*, 151 Kan. 497, 99 P. 2d 822.) The weight to be given to all that evidence was for the trial court. Having weighed all of the evidence the trial court concluded that the disability suffered by claimant resulted from the injury of November 18, 1945. We have no authority to, reweigh this evidence and reach a different conclusion. We have no difficulty in saying that the evidence was sufficient to justify the trial court in the conclusion it reached.

Counsel for appellants point to some discrepancies in the testimony of claimant. We have previously referred in part to those. There was testimony that claimant's injury has made him highly nervous and that he was nervous at the time of both the hearings before the commissioner. Counsel for respondent quite vigorously cross-examined him at both hearings. There were some discrepancies, at least a part of which arose from the fact that claimant did not understand the questions or take sufficient time to comprehend them. In this connection counsel for appellants cite cases from other states to the effect that when a situation of that kind arises "the trier of the facts is not entitled to guess as to which version is correct and as a matter of law the testimony is unsufficient to sustain the burden of proof." Counsel frankly state they find no cases in our reports to sustain this rule. Indeed, the rule is contrary to our many decisions previously noted herein. Counsel suggest that the rule contended for is clearly analogous to the situation involved in *Streeter v. Dowell*, 43 Kan. 545, 23 Pac. 599. An examination of that case discloses that the question actually ruled upon there was that there was no substantial evidence to support the verdict of the jury, and the case has been so treated in the only two cases in which it has been cited by this court (*King v. Telegraph Co.*, 81 Kan. 223, 228, 105 Pac. 449; *Elliott v. Ball*, 113 Kan. 447, 449, 215 Pac. 293). As so construed the rule is a common one in this state. But, as previously noted, counsel do not invoke it here, and if it were invoked it would lack merit. As the trial court pointed out, claimant had performed his work for two years prior to his injury on November 18, 1945, and that he never has been able to do the work since that date. Medical evidence which is not controverted connects his present disability with that injury.

Counsel for appellants stress a conflict in the evidence in this respect: Claimant testified that Doctor Leonard, on December 26, 1945, released him for light work. Doctor Leonard testified that the release was not so limited; that he released him for work. Doctor Leonard made a report to the employer that claimant was released for work. There is no contention that claimant saw that report or was told about it, hence the report itself is not binding upon claimant. The discrepancy in the oral testimony was for the trier of facts. The trier of facts had a right to believe claimant as distinct from Doctor Leonard on that point; indeed, it was the duty of the trier of facts to do so, if he thought from the entire situation such a construction was proper.

We find no error in the record. The judgment of the court below is affirmed.