Brownrigg v. Swift & Co.

---

No. 24,619.

Maria Brownrigg, *Appellee,* v. Swift & Company, *Appellant.*

SYLLABUS BY THE COURT.

Compensation Act—*Personal Injuries—Sufficient Notice of Accident.* The proceedings in an action for compensation considered, and *held,* findings of the jury that notice of accident was given and that the employer suffered no prejudice from omission to give the notice within ten days, are sustained by the evidence.

Appeal from Wyandotte district court, division No. 3; William H. McCamish, judge. Opinion filed July 7, 1923. Affirmed.

*Russell Field,* of Kansas City, Mo., for the appellant.
*J. H. Brady, T. F. Railsback,* both of Kansas City, and *Robert M. Murray,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was by a widow, for compensation for death of her husband. Plaintiff recovered, and defendant appeals. The questions presented are, whether defendant received notice of accident within ten days, as the statute requires, and if not, whether defendant was prejudiced.

The deceased, John Brownrigg, was door tender of a cooler in defendant's packing house. While in the performance of duty, a passing truck, operated by a colored man, ran over the big toe of his right foot. The toe was lacerated and bruised, the wound became infected, and death resulted on April 11, 1921. The precise date of the accident was not shown. On March 1, the workman, who had

been troubled by the injury for some days, went to the medical department of the plant, where he was seen by Doctor Bradshaw. Bradshaw was not a licensed physician, but was a nurse, with experience in handling medical and surgical cases, and was on defendant's medical department staff. What, if any, examination of the wounded toe Bradshaw made on March 1, is not disclosed. On March 4 Brownrigg returned. Bradshaw found the toe badly infected, and the toe, foot and ankle badly swollen. He removed a portion of the toenail, dressed the wound, sent Brownrigg home in the company car, and placed his name on the call list. Bradshaw asked Brownrigg how it happened. Brownrigg did not subsequently return to the plant, and Bradshaw did not see him again. The next day Doctor Farr, whose testimony defendant did not abstract, visited Brownrigg. Doctor Farr was assistant to Doctor McElvain, the company's physician and surgeon, and took care of outside cases. He made the visit pursuant to call recorded on Doctor McElvain's book in defendant's office, and obtained the call list from Doctor McElvain. Doctor Farr found the toe infected. Part of the nail had been removed. There was a breaking of the skin half an inch back of the nail, and a blood clot under the nail. Doctor Farr visited Brownrigg again on March 7. The infection was spreading, and Doctor Farr called the company auditor by telephone, from Brownrigg's house, and told him it was a hospital case. The auditor had jurisdiction over the doctors and over accident claims. On that occasion Brownrigg told Doctor Farr a colored man ran a truck of meat over his toe at the plant. In the telephone conversation, Doctor Farr told the auditor the workman would not claim an accident if he could get his position back. There was testimony Doctor Farr told the auditor the old man's foot was in bad condition, they would have to take him to the hospital, his foot would have to be amputated, and it meant life or death to him. Preparations were made to take Brownrigg to the hospital at once, and then the doctor decided not to do so. The next day defendant informed Brownrigg's daughter, Mrs. Condron, who was living with her father and was making inquiry for him, they should call their own physician.

Doctor Clopper was called. Later he took Brownrigg to the hospital, removed the toe and part of the foot, and treated him until he died. Doctor Clopper testified that when he first saw the patient there was a contused and lacerated condition of the toe. J. Phillip Knippenberg, who had had twenty-two years training and experi-

ence in therapeutics, was present. He testified that back of the first joint of the toe appeared an abrasion or bruise, and near the quick appeared a black formation like stagnant blood.

After Brownrigg's death, Mrs. Condron went to the auditor's office to inquire about compensation. The auditor testified he told her his investigation showed no accident, and the cause of death was an ingrown toenail.

Brownrigg quit work on March 4. Mrs. Condron testified he worked two weeks before he quit and stayed at home. Testifying more specifically, she said he continued to work twelve or thirteen days after his toe first bothered him. The jury returned the following special findings:

"1. Did the deceased, John Brownrigg, give Swift & Company a notice of the injury alleged in plaintiff's petition? A. Yes.

"2. If you find the deceased gave no notice of the alleged injury, state whether or not the defendant was prejudiced by the failure to give such notice. A. No.

"3. Did John Brownrigg notify defendant that he had an ingrowing toenail? A. No.

"4. Was the death of John Brownrigg due to gangrene caused by an ingrowing toenail? A. No.

"5. Was the death of John Brownrigg due to infection caused solely by having his toe run over by a truck? A. Yes."

The burden rested on defendant to show it was prejudiced because it did not receive notice of the accident within ten days. (Gen. Stat. 1915, § 5916.) Defendant's testimony was that it knew about an ingrown toenail, but not about any accident. Prejudice is left to inference from the fact defendant did not receive notice of accident within ten days. Circumstances might be such that prejudice might be presumed from delay in giving notice. (*Vassar v. Swift & Co.*, 106 Kan. 836, 189 Pac. 943.) In this instance the question was one for the jury.

It is a fair inference that the injury occurred twelve or fourteen days before March 4. The condition of the toe, plain to the observation of every one who saw it, spelled injury by accident. On March 4, Bradshaw was impelled to ask Brownrigg how it happened. He would scarcely inquire how an ingrown toenail happened. On March 7, Farr was informed of the details of the accident, and he told the auditor accident would not be claimed if the workman could keep his job. Farr made preparation to remove his patient to the hospital, because life depended on amputation, and then desisted. The next day defendant dropped the case, and notified the

family to employ their own doctor. The auditor, who had jurisdiction over the doctors and over accident claims, admitted investigation. He quibbled somewhat over "investigation" and "information," but he claimed to know the cause of death, which he said was not accident. The jury doubtless believed that, in view of Farr's alarm, investigation was then made, and the auditor concluded to stand on the ingrown-nail theory. In any event, the court cannot say the jury's findings of notice and no prejudice lack sufficient support.

There is nothing else of importance in the case. Prejudicial error was not committed in rulings on testimony. The instructions properly referred to notice to defendant's medical and auditing department, and were otherwise free from material error. The case of *Smith v. Boiler Works Co.*, 104 Kan. 591, 180 Pac. 259, has no application to the present controversy, and the judgment was correct in form and amount.

The judgment of the district court is affirmed.