No. 36,199

Mattie Hall, *Appellee*, v. Kornfeld-Harper Well Servicing Company and Employers Mutual Liability Insurance Company, *Appellants*.

(151 P. 2d 688)

Opinion filed September 30, 1944.

*E. S. Hampton,* of Salina, argued the cause, and *C. W. Burch, B. I. Litowich, LaRue Royce and H. H. Dunham, Jr.,* all of Salina, were on the briefs for the appellants.

*Alden E. Branine,* of Newton, argued the cause, and *James L. Galle,* of McPherson, and *Ezra Branine, Fred Ice* and *John P. Flinn,* all of Newton, were on the briefs for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was a death claim for compensation under our workmen's compensation law. The trial court made findings of fact and allowed compensation. Respondents have appealed and contend

(1) there was no substantial, competent evidence to support the material findings of the court, and (2) that respondents were prejudiced for want of statutory notice of the accident.

Respondents were partners in the oil well servicing business. In January, 1942, they employed Jesse H. Hall to operate a servicing unit. This unit had a seat from which he could reach the various levers to operate the unit. It was tied down by a chain to a cement corner three or four feet high to keep it from slipping. On one day early in March, 1942, this chain broke, which permitted the unit to move forward a few feet against the corner of the derrick and the seat to be thrown up as much as eight inches. At the time this happened Mr. Hall was sitting on the unit and was thrown off the seat and into the air and fell as much as four or five feet. Mr. Kornfeld went to the lease between 4:30 and 5:00 o'clock that afternoon and learned that the chain had broken on the servicing unit. Mr. Hall and Mr. Bartel, his roustabout, were there discussing the matter and Mr. Hall told Mr. Kornfeld what had happened. Mr. Kornfeld testified that Hall said nothing to him at that time about his having received any personal injuries, and that he did not know until about September 15, 1942, that Hall claimed to have been injured at that time.

Hall was severely bruised on the left hip, which troubled him with his work for a time. He had a bruise also on the left arm between the shoulder and elbow about three inches in length and width and a bruise on the calf of his left leg from four to six inches in circumference. His wife noticed no bruise on his neck, but the next morning he complained of its being sore and stiff. Within a few days—less than a week—a lump formed in the gland under the left jaw. His wife had never noticed such a lump there before. Notwithstanding his condition he continued to work until July 26. In the meantime the lump on his jaw increased in size until it was perhaps three inches long and an inch and a half high. It caused him no pain or particular inconvenience for a few months, but perhaps in June it began to be troublesome. The manner or extent of this trouble is not clearly shown by the record. In August, 1942, he was taken to the Halstead hospital, where the gland was removed for diagnosis. Concerning this, Doctor Chesky, who performed the operation, testified:

"He came in in August, August 10, 1942, with a nodular mass on the left side of his neck that he had said started in March, or had been present

since March. He had stated that this was a painless swelling; that recently there was some aching and soreness in it. The other side of the neck showed no involvement or there was no—there were no lumps under the arms or in the groins. We made a diagnosis of Hodgkin's disease, and advised the removal of one of the nodules of the neck to substantiate that diagnosis, and that was done the next day after he came in on August 11th.

"Q. And that verified your other diagnosis, did it, Doctor?  A. We made a microscopic diagnosis of Hodgkin's disease."

The trouble was diagnosed as Hodgkin's disease, from which he had suffered prior to March 1, 1942. He worked a few days—not at his regular job—after this operation. He died February 27, 1943. The cause of his death was Hodgkin's disease.

Mattie Hall and Jesse H. Hall had been married twenty-five years. They were the parents of eight children, four of whom were minors. On March 13, 1943, Mattie Hall, on behalf of herself and the four minor children, filed a claim for compensation, claiming that her husband's death was the result of the accident when he was thrown off of the well servicing unit about March 1, 1942. It was stipulated that the parties were operating under the workmen's compensation act and that in the event an award was made the widow and minor children were entitled to full dependency. The questions at issue were whether Hall met with personal injuries by accident arising out of and in the course of his employment which resulted in his death, and was notice of the alleged accident given and claim made as provided by law. The compensation commissioner denied compensation. The claimant appealed to the district court, where, in addition to the formal findings, the court found:

"That on said date [about March 1, 1942] said Jesse H. Hall met with a personal injury by an accident arising out of and in the course of his employment with the Kornfeld-Harper Well Servicing Company, which resulted in his death on February 27th, 1943. That at the time of the accident, claimant was suffering from what is known as Hodgkin's disease. That the progress of the disease was hastened, aggravated and accelerated by the accident and resultant injuries, thereby hastening the death of Jesse H. Hall. . . . That notice of the injury of Jesse H. Hall was not given until September 15, 1942, but no resulting prejudice was shown and none exists."

The court's finding that Hall was suffering from Hodgkin's disease at the time of the accident in March, 1942, is not controverted. Appellants contend there was no competent evidence to support the court's finding, "That the progress of the disease was hastened, aggravated and accelerated by the accident and resultant injuries,

thereby hastening the death" of Hall. This presents to this court a question of law. In deciding the question the court does not weigh the evidence, since that is the function of the trial court, but examines the record to see if there is substantial, competent evidence to support the findings of the trial court, and in doing so ignores controverting evidence which may not have been given credence. A judgment cannot rest upon mere surmise or conjecture. These legal principles are well established in our law and are not controverted here. See the late cases of *Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. 2d 846, and *McMillan v. Kansas Power & Light Co.*, 157 Kan. 385, 139 P. 2d 854, where the principles are stated and previous authorities cited.

We have no occasion here to write a thesis on Hodgkin's disease. Those interested may consult Sajous's Analytic Cyclopedia of Practical Medicine, 10th Rev. ed., Vol. VI, pp. 332 to 354; Oxford Medicine, Vol. IV, pp. 4 to 41; The American Journal of the Medical Sciences, Vol. 188, p. 597 *et seq.*, and pertinent articles in the Journal of the American Medical Association.

From the evidence in this case and the above authorities it appears that Hodgkin's disease is characterized by an enlargement of the lymphatic glands, accompanied by progressive anemia, and terminating in a fatal result. It more frequently shows itself in the glands of the neck, but may involve other of the glands, as those under the arm, the abdomen, or the groin. Sometimes the spleen is affected, and less frequently the liver and bone marrow. As the gland enlarges a real change takes place in the cell structure. Sometimes this suggests an unusual variety of tuberculosis of the lymphatic glands; at other times it is thought to be identical with one variety of a malignant tumor. (See "Is Typical Hodgkin's Disease an Infection or a Neoplasm?" American Journal of the Medical Sciences, Vol. 188, p. 597.) The disease begins slowly and without pain, and one may be afflicted with the disease for several months, or even for several years, without knowing it. The authorities and the evidence before us agree that the cause of Hodgkin's disease is unknown. The progress in some cases has been slowed by treatment with radium or X-ray therapy.

Appellants rely heavily upon a quotation from Gray's "Attorneys' Textbook of Medicine," p. 526 (2d ed., p. 789), which reads: "Medical authorities agree that Hodgkin's disease cannot be either caused or aggravated by injury." The same thought is expressed by the

author at two other places in his article on Hodgkin's disease, but no medical authority is cited to that effect. Neither is such medical authority cited by appellants, and our own research discloses none.

Without regard to the correctness of the authority so relied upon by appellants, the trial court was compelled to decide this case upon the evidence before it, and our sole question is whether or not there was substantial, competent evidence to sustain the finding and judgment of the trial court. Upon that point the best that can be said for appellants is that the evidence was conflicting. Five doctors testified. One of them stated that he did not know the cause of Hodgkin's disease, for which reason he would express no view as to whether it might be caused or aggravated by trauma. Two of them testified in substance that in their judgment trauma would injure tissue affected by Hodgkin's disease just as readily as it would injure healthy tissue, or tissue affected by any other disease. They also expressed views that from the fact the workman suffered pain and discomfort in his neck the next morning, and a lump formed in the gland in the neck within a very few days after the injury, it was reasonable to suppose that the injury had something to do with it, and that probably the injury aggravated the disease and shortened the life of the workman. Two of the physicians gave it as their judgment that Hodgkin's disease could not be aggravated by trauma, basing their testimony largely upon the fact that the medical authorities do not mention trauma as either a cause or an aggravation of the disease. In fact, it is mentioned, so they testified, in the history of but a few of the cases. One of them testified that he had never had a case in which he was sure the disease had been aggravated by trauma. The weight to be given to this evidence was, of course, for the trial court and not for this court.

It is well settled, of course, that an injury which aggravates an existing disease and accelerates the death of the workman is compensable. Appellants argue that the medical testimony relied upon by the court went no further than to indicate that it was possible that the disease was aggravated by the accident and that therefore the judgment of the court is founded upon speculation or surmise. We think the evidence is not open to that interpretation but went further, to the effect that the injury probably had the effect of aggravating and accelerating the disease. See 32 C. J. S. 400; *Parker v. Farmers Union Mut. Ins. Co.*, 146 Kan. 832, 73 P. 2d 1032, cited approvingly in *Guiles v. Dept. of Labor & Industries*, 13 Wash. 2d

605, 126 P. 2d 195, 198. The testimony covers several pages of the abstract. We think it is not necessary to set it out in full, but we have examined it with care in view of the contention made by appellants on this point. Appellants contend they were prejudiced by lack of notice of the injury. The statute on this question reads (G. S. 1935, 44-520):

"Proceedings for compensation under this act shall not be maintainable unless notice of the accident, stating the time and place and particulars thereof, and the name and address of the person injured, shall have been given to the employer within ten (10) days after the accident: *Provided,* That actual knowledge of the accident by the employer or his duly authorized agent shall render the giving of such notice unnecessary: *Provided further,* That want of notice or any defect therein shall not be a bar unless the employer prove that he has been prejudiced thereby."

We have no disposition to weaken the effect of the first part of this statute. No doubt there are many instances in which the lack of reasonably prompt notice of the accident would be prejudicial to an employer, but it will be observed the statute contains two provisos: *First,* "actual knowledge of the accident by the employer  .  .  . shall render the giving of such notice unnecessary." This proviso was inserted in the statute in 1927 (Laws 1927, ch. 232) since our decisions (*Vassar v. Swift & Co.,* 106 Kan. 836, 189 Pac. 943, and *Brownrigg v. Swift & Co.,* 114 Kan. 115, 217 Pac. 278) cited by appellants. Here one of the respondents testified that he was present on the same day and soon after the accident, and was told by Hall what happened. He did say that Hall did not say anything about being hurt, but for one to be thrown with force from a seat on the servicing unit into midair and to fall as much as four or five feet is itself some indication that the workman might have sustained some injury. It is quite likely under this evidence that Hall did not then know that he had Hodgkin's disease. The other proviso places the burden upon the employer to prove that he had been prejudiced by the lack of notice. *Hatch's Case,* 290 Mass. 259, 195 N. E. 385, cited by appellants, is not in point, for the statute there considered placed the burden of proof upon the claimant to show the insurer was not prejudiced. We find no evidence in the record tending to show such prejudice. Indeed, it 's not seriously argued that such evidence exists. This was a question of fact decided adversely to appellants, both by the compensation commissioner and by the trial court. We find no reason to disturb it.

Judgment was rendered for claimant in the district court March

10, 1944, for $4,000 on account of the death claim, and an additional sum of $150 on account of burial and funeral expenses, "and interest on both of said amounts at the rate of six percent per annum from February 27, 1943, and for the costs of this action." Appellants complain of the part of this judgment allowing interest on the award, citing *Richardson v. National Refining Co.*, 137 Kan. 473, 21 P. 2d 307, and *Woods v. Jacob Dold Packing Co.*, 141 Kan. 363, 41 P. 2d 748. We think the point is well taken. Appellee does not contend otherwise.

The result is that the judgment rendered by the district court must be modified by setting aside the interest upon the award, and as so modified, affirmed. It is so ordered.