No. 35,142

LEE HALL, *Appellee*, v. ARMOUR AND COMPANY, *Appellant*.

(113 P. 2d 145)

Opinion filed May 10, 1941.

*Edwin S. McAnany, Thomas M. Van Cleave, Willard L. Phillips, Bernhard W. Alden, Patrick B. McAnany* and *Thomas M. Van Cleave, Jr.,* all of Kansas City, for the appellant.

*David F. Carson* and *David W. Carson,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment on an award of compensation for injuries sustained by a workman in his employer's service.

It appears that on and prior to October 15, 1938, the claimant, Lee Hall, worked as a repair man on carrier tubes in the respondent's packing plant in Kansas City. While standing on a ladder he slipped and fell astride a conveyor belt and received injuries in the region of his groins and also in his back. He was taken to a hospital and bandaged front and back and given some medicine. He remained in the hospital eight days and thereafter stayed at home for two or three weeks. He then reported for work, but was unable to perform any. His employer paid him his regular wages of $27 per week from the time of his injury until January 7, 1939—some twelve weeks. Thereafter for nine weeks he was paid at the statutory rate of 60 percent of his average wages, $16.20 per week, for temporary total disability. His alleged injuries had no objective

symptoms discernible by the doctors who examined him from time to time, so the respondent urged him to go to Chicago to consult a specialist, one Doctor Solomon, and offered to pay his expenses. Claimant declined to do so, and in consequence, on March 11, 1939, respondent quit paying him compensation.

Then followed the usual formal proceedings before the compensation commissioner. Witnesses testified *pro* and *con* touching his injuries, the extent of his incapacity, and its probable duration. On August 25, 1939, the commissioner made findings, the material parts of which read:

"The preponderance of the medical testimony is to the effect that the claimant herein is disabled at the present time and that such disability is the result, directly or indirectly, of the accidental injury of October 15, 1938. The consensus of opinion is that the claimant will be disabled for a period of from six months to one year from the date of the hearing.

. . . . . . . . . . . . . . . .

"The respondent herein paid claimant his regular wages from the date of the injury, October 15, 1938, to January 7, 1939, and thereafter paid claimant $16.20 per week until March 11, 1939. For the period of time during which the respondent paid claimant his regular wages, although claimant had not returned to work, the respondent is entitled to credit at the weekly compensation rate of $16.20. Any amount paid to claimant weekly over and above the regular weekly compensation rate must be considered as a gratuity and not to be credited to the respondent on the compensation due to claimant."

Accordingly an award of compensation for 77 weeks was made, together with an allowance not to exceed $500 for medical and hospital expenses. The usual administrative costs were charged against the respondent.

Both parties appealed to the district court, which set aside the commissioner's award of compensation for 77 weeks, and in lieu thereof made an award at the same rate for 152⅔ weeks. It did, however, set aside the $500 allowance made by the commissioner of compensation.

The respondent now brings the cause here for further review, contending chiefly that there was no evidence in the record to justify an award for 152⅔ weeks or for any length of time in excess of the 77 weeks' award made by the compensation commissioner.

The expert testimony was that there was an almost complete dearth of objective symptoms of injury. Doctor Bresette, called as a witness by claimant, testified that claimant complained of pain down the inside of his left leg up into the groin, that the muscles in

that region would go into spasm when manipulated, that claimant walked with a slight limp as if favoring his left side; that such was an abnormal condition and was possibly due to trauma. Claimant was highly nervous, talkative and flighty. He further testified:

*Cross-examination:*

"Q. Did you find any objective symptoms? A. Nothing objective except . . . the spasm of the left adductor muscles when you attempt to manipulate his leg, that is he complained of tenderness on manipulation.

"Q. If this fall caused any injury to those muscles would you expect to have the fall followed by some external evidence of injury? A. Yes. Normally a fall of that severity should cause ecchymosis in the tissues and swelling. There should be swelling and it should turn black and blue . . . an accident severe enough to cause what he has should leave external evidence. If it did not, an accident was probably not the cause. There was nothing about his condition that wouldn't be present in a neurastheniac. Everything he complained of might have been caused by neurasthenia.

"The difference between a malingerer and a neurastheniac is that a malingerer builds up symptoms and says he has pain when he doesn't, and a neurastheniac has pain. There is no way to tell whether a person is lying. It is entirely possible that a person can have litigation neurosis."

Elsewhere this witness testified:

"It would seem that this condition in his leg muscles should improve . . . I believe he is still unable to do heavy work at this time. Just how long that would be I would be guessing to state, but it would seem that wouldn't be permanent.

"Q. And you have no notion how long it would be before he could if at all? A. Well, it's entirely a conjecture on my part, but I would think it would be in the neighborhood of another year anyway."

Doctor Neas, another witness for claimant, testified:

*Cross-examination:*

"Q. In the ordinary course of time you think he would probably be recovered, that he would not be incapacitated any longer than six months? A. I couldn't say as to time.

"Q. In your best judgment. A. I think he will eventually get well, but I wouldn't set a definite time.

"Q. What is your best judgment on it? A. Six months to a year, or it might even be longer."

Doctor Angle, called as a witness for respondent, testified:

"He (claimant) is a neurastheniac. It is difficult to differentiate between that and malingering. . . .

"Q. Do you feel that he has a permanent inability to work? A. No. I think that Mr. Hall will straighten out. He isn't so old but what he can straighten out. I think with the element of time and good advice he should get well.

"Q. Within what time? A. And it may take six months or a year. And some of these people do remarkably well in even a shorter time than that sometimes.

. . . . . . . . . . . . . . . .

"Q. In a person in Mr. Hall's condition, how long would you think such an aggravation would tend to exist? A. Well, I think I would be in agreement with what I heard his other doctors testify to, that a few months, and not longer than a year, he should be all right."

The common law rules as to the competency and sufficiency of evidence are not strictly applied in workmen's compensation cases (*Parker v. Farmers Union Mut. Ins. Co.*, 146 Kan. 832, 73 P. 2d 1032), but an award of compensation for future disability must be based on some substantial evidence (*Fair v. Golden Rule Refining Co.*, 134 Kan. 623. 7 P. 2d 70; *Cowan v. Kerford Quarry Co.*, 146 Kan. 682, 72 P. 2d 999). Where there is no evidence to support an award this court has no alternative but to set it aside (*Whitaker v. Panhandle Eastern P. L. Co.*, 142 Kan. 314, 46 P. 2d 862). The testimony of one doctor who merely "conjectured" that claimant's disability might last more than a year was insufficient to support an award—particularly where, as here, objective symptoms of disability or other observed phenomena were wanting. Mere subjective symptoms will not support an award for future disability. (*Lehigh Stone Co. v. Industrial Com.*, 315 Ill. 431, 436, 146 N. E. 533; *Gulf Refining Co. v. Frazier*, 15 Tenn. App. 662, 688, 689, 83 S. W. 2d 285; *Texas Employers' Ins. Ass'n v. Wallace*, Tex. Civ. App., 70 S. W. 2d 832; 2 Schneider on Workmen's Compensation, 2d ed., ¶ 525a; 22 C. J. 640, 669, 670, 675, 726, 727.)

As this claimant was injured on October 15, 1938, the district court's award of compensation for 152⅖ weeks, beginning on October 22, 1938, would run until about the middle of September, 1941. It will be noted that in the testimony quoted above, and ignoring its tenuous if not quite incompetent character, the doctors were of the opinion that claimant's disability *to labor* should disappear within six months or a year. That testimony was given on June 12, or July 10, 1939—the two dates of the hearing before the compensation commissioner. Giving weight and credence to that testimony, claimant's disability might last another year from the date those doctors gave

their testimony. That would carry the time in which he might be entitled to an award down to July 12, 1940. From October 22, 1938 (one week after his injury), to July 12, 1940, is 1 year, 8 months, 20 days, or 87 weeks. While the compensation commissioner only allowed an award for 77 weeks, it will be seen that on the testimony —such as it was—an award could have been made for 87 weeks. By the same token, however, there was no substantial evidence to justify the trial court's enlargement of the time the award should be paid, to 152 weeks, and its order must therefore be modified and reduced to 87 weeks' compensation from October 22, 1938, with the appropriate credits for payments already made, about which there is no dispute.

On the other error urged by respondent—that claimant's right to compensation ceased when he declined to go to Chicago to be examined and treated by Doctor Solomon, there is lacking any testimony tending to show that Doctor Solomon probably could have cured claimant's ailment or done him any substantial good; nor was there any testimony that no competent specialist to treat claimant was available in Kansas City or thereabout. The court holds that this point urged in behalf of respondent is not tenable. However, the trial court's order setting aside the allowance of $500 for hospitalization and medicine was eminently correct. There was no testimony to support such an allowance. The court's order reads:

"The court further finds that respondent has provided hospital, medical and surgical treatment for claimant, who refused further medical treatment offered by respondent, and that the portion of the award for hospital and medical expense to be paid by respondent in an amount not exceeding $500 should be entirely set aside and disallowed."

In view of the foregoing it will be necessary to remand this cause to the district court with instructions to reduce the award from 152⅖ weeks to 87 weeks, and in all other respects the judgment of the district court will be affirmed. It is so ordered.