No. 36,220

REUBEN COLEMAN, *Appellee*, v. STANDARD RENDERING COMPANY, *Appellant.*

(155 P. 2d 320)

Opinion filed January 27, 1945.

*N. E. Snyder,* of Kansas City, argued the cause, and *M. W. Borders* and *Wilfred Wimmell,* both of Kansas City, Mo., were on the briefs for the appellant.

*Joseph Cohen,* of Kansas City, was on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was a workmen's compensation case. The

appeal is by respondent from an order of the workmen's compensation commissioner, sustained by the district court, upon the hearing of claimant's petition for review and modification, which order increased the compensation originally allowed. Appellant contends there was no substantial evidence to support the order of modification since it was based on testimony relating to subjective symptoms only.

The facts disclosed by the record may be summarized as follows: Claimant was in the employ of defendant, operating as a self-insurer under the workmen's compensation act. On May 21, 1943, he was assisting in wrecking a building, the walls of which caved in and claimant was injured by the falling walls. He was unconscious for a time and was taken to a hospital, where an examination showed he was seriously injured. There were lacerations of the face so serious as to cause considerable deformity, particularly about the eyes; simple fractures of the first, second, third and fourth lumbar vertebrae transverse processes; simple fracture glenoid fossa right scapula, and simple fracture of the coracoid process of the right scapula. He was released from the hospital July 14, 1943. He filed claim for compensation, which was heard by the commissioner on September 29 and October 12, 1943. The points in controversy at the hearing were whether claimant's injury arose out of and in the course of his employment with respondent, the nature and extent of the disability, and the determination of whether compensation was due, and the amount. Doctor Feehan examined the claimant July 1, 1943, for the purpose of testifying. He found abnormalities of the eye at that time, but later it was ascertained there was no loss of vision. He found pronounced muscle spasm in the lumbar region on both sides. X-ray pictures of the lower lumbar spine demonstrated a pronounced hypertrophic deposit on the anterior vertebral margins of the fourth and fifth lumbar vertebrae. It was his opinion claimant was wholly disabled to perform work at that time, and while he did not think such total disability would be permanent, he did not know how long it would last.

At the hearing on September 29 respondent asked that a neutral physician be appointed. The commissioner appointed Doctor Allen, a specialist in X ray, and Doctor Hesser. They examined claimant on October 8. At the later hearing Doctor Allen testified the X rays revealed an extensive spondylitic deformity of the lumbar vertebrae, particularly the fifth, with marked flattening of the body. He also

examined the X-ray films made in May, which showed the fracture of the lumbar processes. He also examined both shoulders. On the right shoulder there was no bone pathology of any type, but there was some difficulty found in abducting the arm. With reference to the left shoulder there was some hypertrophic fringe, which could explain painful abductions. He thought there was a small percentage of permanent disability in the back and arms as a result of the injury. It was also Doctor Allen's opinion that, assuming claimant has a four-plus Wassermann, this condition could not contribute in any way to the disability now suffered. Doctor Hesser testified he made the examination with Doctor Allen on October 8, described the scar on the face in detail, stating it was very extensive and was disabling as a disfigurement. He found joint weakness and limitation of abduction in raising the left arm away from the body. He also found marked muscle spasm in the lumbar region of the back, being more marked on the left side than on the right. It was his opinion claimant was unable to perform manual labor, and that aside from the disfiguring scar on the face there would be a permanent partial disability around twenty-five percent.

Doctor Mueller, called as a witness for respondent, described the scar on claimant's face and stated that in his opinion it would constitute a disability by reason of disfigurement. He failed to find any limitation of motion in the joints of either arm. He did find noted muscle spasm of the lumbar muscles, about two-plus on the scale of four; forward bending was limited twenty to twenty-five percent, and lateral bending twenty-five to thirty-five percent. He was of the opinion claimant should commence work; that he was probably fifty percent disabled to perform manual labor at that time, and that the disability should end on a basis of about fifteen percent. There was other medical evidence. The claimant gave testimony to the effect that he was unable to do any heavy lifting without his back hurting to such an extent that he could not perform work. The commissioner found that the claimant was injured by an accident which arose out of and in the course of his employment; that the claimant was wholly unable to perform manual labor; that when he does return to work his percentage of disability will be lower with the passage of time, and that the remaining percentage of disability will be from fifteen to twenty-five percent without considering facial disfigurement, and that whenever it was thought proper either party might ask for a review and modification. The specific finding was

that the claimant was entitled to compensation for twenty-six weeks for temporary total disability, to be followed by thirty-three and one-third permanent partial disability for the remainder of 415 weeks. An award was made in harmony with this finding. The period of temporary total disability, as found by the commissioner, expired November 25, 1943. The above statement is made from the award. Neither party appealed from this award.

On December 3, 1943, the claimant filed a petition for review and modification of the award alleging that the award heretofore made is inadequate and that his incapacity and disability had increased. This petition came on for hearing before the commissioner on March 14, 1944. The claimant testified that he had been unable to work, that his back and shoulders hurt him, that he feels weak, that it hurts him to reach up or to bend or to lift anything heavy, that he has constant pain in his back, in his shoulders and down to his elbows, and that he has dizziness also. Answering questions by counsel and the commissioner he demonstrated how far he could bend over, how high he could raise his arms, etc. Doctor Hesser was reappointed as a neutral physician to examine the claimant in connection with his petition for review and modification, and he examined the claimant on January 21, 1944. He testified:

"My examination of this man revealed no essential changes in his previous complaints; but on the physical examination of the individual I found that improvement had taken place . . . he could raise both arms better, I felt that there was less muscular spasm in the back, that is the lower back area, and I thought that this individual could handle himself in locomotion better than he could at the time when I first examined him. There was still, however, some limitation in the rotation of his spine in movements, but that limitation, too, was less than it had been on previous examination."

Doctor Hesser testified that the claimant should be given more time to note whether he will improve further; thought he would improve more, and that at the end of the next four to six months he will have arrived at the maximum peak of recovery. He considered the claimant totally disabled at that time to perform manual labor. Answering questions, the doctor explained quite in detail the examination he had made of the claimant, and testified there was still muscle spasm there and limitation of motion. On cross-examination the doctor was asked and answered the following questions:

"Q. He tells you he can't raise his arms. That is purely subjective, is it not? A. Yes, that is very true.

"Q. Rotating the spine likewise is purely subjective, is it not, as to how far he can rotate it? A. Without pain; that is true.

"Q. The muscle spasm you consider as an objective symptom? A. That is the only objective sign that I have in this case. You might say that the vast majority of his symptoms were subjective."

The doctor further testified that the spondylitic condition shown by the X rays would retard the recovery of the back injury just as a chronic arthritic condition of the knee would tend to retard a traumatic injury of the knee.

In the order of modification the commissioner, among other things, said:

"The evidence was reviewed in the previous award and will not be repeated here but the statements made in that award are made a part of this review and modification of the original award made."

The commissioner then reviewed the evidence presented at the hearing of the petition for review and modification, spoke of the examination made of the claimant by Doctor Hesser, and said:

"As a result of this examination, it was the doctor's opinion that claimant is making progress even though there are no essential changes with reference to his previous complaints. The doctor was able at this last examination, however, to note muscle spasm remaining in the back and certain limitation of motion. It was the doctor's opinion that it would be four to six months from the date of his examination on January 21, 1944, before claimant would reach his maximum recovery. No evidence was offered to dispute the doctor's testimony. It is, therefore, found and an award is hereby made finding that temporary total disability will continue on from November 25, 1943, for an additional period of thirty-six weeks followed by permanent partial general disability in the amount of thirty-three and one-third per cent for a period of not more than the remaining three hundred fifty-three weeks. . . ."

An award was made in harmony with that finding. Respondent appealed to the district court, which—

"Adjudged and decreed that the award of the workmen's compensation commissioner on November 8, 1943, as modified and increased on the 15th day of March, 1944, be and the same is hereby sustained and the respondent is hereby ordered to pay . . ."

From this judgment of the district court respondent has appealed.

Appellant cites and relies almost entirely upon the opinion of this court in *Hall v. Armour & Co.*, 153 Kan. 656, 113 P. 2d 145. Perhaps a careful analysis of that decision and the authorities cited (p. 659) would demonstrate that it does not have the force attributed to it by appellant. But we find no occasion here to make such an analysis. The factual situations of the two cases are clearly dis-

tinguishable, so much so that we need not repeat them here. From Doctor Hesser's testimony it cannot be said that he based his judgment upon what the claimant told him. The claimant testified upon the hearing of the petition for review respecting his inability to work, to make certain movements, and to his pain. This was sworn testimony and Doctor Hesser was authorized under the authorities to take that into account; but an examination of his evidence discloses that he relied on his own examination of the claimant upon the two occasions when the court had him make such examination and upon his own judgment as a physician respecting the condition of the claimant. The commissioner's findings and award were based upon what Doctor Hesser testified to from his examinations of claimant.

We find no error in the record. The judgment of the court below is affirmed.

BURCH, J., not participating.