No. 37,127

MARGARET ARVILLA JONES, *Appellee*, v. WESTERN UNION TELEGRAPH COMPANY, *Appellant*.

(192 P. 2d 141)

Opinion filed April 10, 1948.

*Peter F. Caldwell*, of Topeka, and *A. Staneart Graham*, of Pittsburg, argued the cause, and *Harry W. Colmery*, of Topeka, was with them on the briefs for the appellant.

*Pete J. Farabi,* of Pittsburg, argued the cause, and *Sylvan N. Bruner* and *Morris Matuska,* both of Pittsburg, were with him on the briefs for the appellee.

The opinion of the court was delivered by

BURCH, J.: This appeal is from a judgment of the district court in a workmen's compensation case in which the claimant was awarded $9 a week for a period not to exceed 415 weeks less the amount previously paid the claimant, and in addition an amount not to exceed $500 for medical and hospital treatment less the sums previously paid for such purpose. The sole specification of error is that the court erred in entering such a judgment because there was not sufficient substantial, competent evidence to sustain the judgment.

The appellee, Margaret Arvilla Jones, is the same person as Margaret Jones Brewington who was appellee in the case of *Brewington v. Western Union,* 163 Kan. 534, 183 P. 2d 872. The change in the appellee's name is due to her matrimonial status. As set forth in the cited case, the appellee, on January 17, 1946, obtained a judgment from the district court allowing her compensation at the rate of $9 a week for not to exceed 415 weeks or until the further order of the workmen's compensation commissioner. On June 3, 1946, the appellant filed an application for review and modification of the judgment before the commissioner. Upon hearing on the application for review and modification, the workmen's compensation commissioner, on January 7, 1947, made an award terminating the plaintiff's compensation as of that date. The appellee appealed from the order of the commissioner to the district court and such appeal was pending on August 9, 1947 at the time of our decision in the cited case. After our decision was filed, the appeal to the district court was heard and as a result, the district court in the present case, on October 20, 1947, set aside the order and award of the commissioner which terminated the plaintiff's compensation and allowed her further recovery on the basis set forth in the first paragraph of this opinion. The prior proceedings should not be confusing in the present case, however, as we have before us only another instance of an appeal to this court from a judgment of the district court in a workmen's compensation case.

The trial court in the present case, upon review of the transcript of the evidence introduced before the commissioner, found that as a result of an accidental injury which the appellee sustained on December 27, 1944, the appellee became and had remained totally

disabled from performing manual and physical labor and that the period of time during which the disability would continue was indefinite and uncertain. Under our statute (now G. S. 1947 Supp., 44-510) which sets forth that claimants under the compensation law are entitled to certain medical services but that the cost thereof shall not exceed $100 except in "extreme cases," the district court found this to be an "extreme case" and adjudged that the appellee should be entitled to recover for medical and similar services an amount not to exceed $500. Such amount was the statutory maximum prior to the 1947 amendment which increased the amount to $750. The trial court also provided for deducting from the judgment the amounts previously paid as compensation and for medical services, but the deductions may be disregarded as they are not controversial in the present case. The trial court also ordered that the appellant should pay the sum of $9.75, which amount was incurred as costs in connection with the taking of the deposition of a Dr. Newman who testified in behalf of the appellee.

1. The appellant calls our attention to a statement from the opinion in *Brewington v. Western Union*, supra, reading as follows:

"The award of the commissioner under the review and modification statute constituted a new award. . . . In the instant case there was an appeal by the workman to the district court which appeal is now pending. . . . *That appeal presents to the district court an entirely new and different record from the one previously presented to it.* The new record reflects *the changed condition* in the workman from that which existed when the district court rendered its first award. The district court could affirm the new award or could allow compensation in accordance with what it believed *the changed condition* of the workman required." (p. 538.) (Emphasis supplied.)

The appellant approves the quoted statement and contends that the record in the present case does not establish by substantial competent evidence that the "changed condition" of the appellee entitles her to the judgment entered in her favor by the district court. Obviously, the contention begs the conclusion that all the competent evidence confirms the contention that the appellee's condition had changed materially at the time the commissioner terminated her compensation. Therefore, we must examine the record to determine whether there was any competent evidence introduced in her behalf which justified the trial court, on appeal, in reaching a conclusion contrary to that reached by the commissioner. Moreover, even if it is found that all the competent evidence shows that the claimant's condition had changed, we must also determine whether there was any competent evidence estab-

lishing that her condition at the time of the last hearing before the commissioner was still such that she was then totally disabled from performing manual labor as a result of the accidental injuries.

Before examining the record, we note that appellant directs our attention to the rule that a finding of total future disability must be based on substantial evidence. In support thereof counsel for appellant cite *Davis v. Packing Co.*, 101 Kan. 769, 168 Pac. 1111; *Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70; *Whitaker v. Panhandle Eastern P. L. Co.*, 142 Kan. 314, 46 P. 2d 862, and rely principally upon *Hall v. Armour & Co.*, 153 Kan. 656, 113 P. 2d 145. In the last-cited case this court held that an award of compensation for future disability is not supported by substantial evidence by mere opinion testimony of medical experts when there is an absence of objective indications of injuries to the workman on which the medical opinions can be founded. The appellant stresses in this case that the personal testimony of the appellee as to her condition at the time of the hearing on review and modification before the commissioner was wholly subjective in its nature as distinguished from objective. Appellant also asserts that Doctor Newman, who testified in appellee's behalf, necessarily based his conclusions upon X-ray pictures which he had taken of the appellee in October, 1945, because he had not taken any X-ray pictures since that date and that, therefore, he could not have referred to any condition disclosed by X rays which were taken within a reasonable time before his deposition was taken on October 18, 1946.

The evidence in the record most favorable to the appellee, which is the only evidence we can consider on the question of law, discloses that prior to December 27, 1944, she was apparently in good health. On such date, while riding a bicycle delivering a telegram for the appellant, her bicycle slipped on an icy concrete driveway and she was thrown to the pavement with such force that she was unconscious for a time and sustained injuries to her legs, head, back, and other injuries unnecessary to enumerate. The appellee testified that many of her injuries continued to bother her at all times thereafter to such an extent that she has been unable to work since her injury and was unable to work at the time her testimony was last taken on October 7, 1946. Appellant does not contend to the contrary but emphasizes that her testimony pertained only to subjective conditions, such as pain, dizziness, weakness, numbness, etc. In addition to her personal testimony, the appellee intro-

duced the testimony of Doctor Newman by deposition. Doctor Newman testified that the appellee had been under his constant care and treatment since October 16, 1945, to the time of the taking of his testimony in October, 1946. No question as to his qualifications is involved, but it may be observed that he qualified as a general surgeon, consultant and as a specialist in the taking and interpreting of X rays. After identifying X rays which he took of the appellee during October, 1945, he testified as follows:

"Q. And what is your interpretation of those X rays since that time?

"A. They are the same as before, that there is separation of the sacroilliac joints of the pelvis and roughening in the occipital region of the head which indicates a fracture having taken place there.

"Q. From your treatment and observation of this claimant, doctor, have you an opinion as to whether she is able to carry on and perform physical and manual labor? A. I have.

"Q. What is your opinion? A. She is not.

"Q. And have you an opinion from your treatment, care and observation of her from the time she first came to you up to the present time as to whether or not she is disabled, in your opinion from your treatment and observation of her, from carrying on and performing physical and manual labor from the time you have seen her up to the present time?

"A. Yes, I think she is and has been."

In answer to long hypothetical questions, which were not objected to at the time, Doctor Newman stated that, in his opinion, the claimant's then present disability was the result of her accident and injury of December 27, 1944 and that in his opinion, the appellee would be unable to carry on physical and manual labor, as a result of her accident, for an indefinite period of probably long duration. On cross-examination, the doctor testified:

"Q. Wouldn't it be possible, doctor, that most of her complaints are neurogenic?

"A. Well, I think a lot of that trouble could be from the injury to the skull and the brain concussion and probable fracture there that we found. However, the pelvic bones there show a bony injury that would have no bearing on a neurogenic thing.

"Q. And it is your opinion she is not able to work at this time, doctor? A. That is right.

"Q. She has improved, however, has she not?

"A. I haven't been able to see much difference in her condition over this period of approximately a year.

"Q. Is it possible that that sacroiliac might be somewhat closer jointed at this time?

"A. It is possible but I can't see any difference in the muscle rigidity and the other findings that she had in that area since the original examination a year ago."

On redirect examination, the doctor tetified:

"Q. Doctor, does this young lady still have spasticity and rigidity of the back muscles in the sacro-illiac region? A. Yes.

"Q. Do you consider that as an objective evidence of trauma or injury? A. I do."

By reason of the foregoing, it is impossible for us to conclude that there was an absence of any substantial evidence in the record showing that the appellee was totally disabled at the time of the last hearing before the commissioner. And we cannot conclude that there was no objective evidence introduced upon which a medical conclusion could be predicated. At the time of the last hearing the appellee was complaining of constant pain in her back. Doctor Newman was asked this question:

"Q. She doesn't complain of any pain, however, doctor, in her pelvis, does she?"

and answered:

"It is in her back and runs around from that area. It is largely in the back but it follows the nerves around."

The appellant, in substance, asks us to conclude from the foregoing testimony that there was no evidence showing that the objective spasticity and rigidity of the back muscles in the sacroiliac region alone incapacitated the appellee from performing manual labor and, therefore, requires that the district court must be reversed on a question of law. To do so in this case would require us to ignore the evidence favorable to the appellee which develops from the doctor's testimony herein set forth to the effect that the doctor had not been able to see much difference in her condition over a period of approximately a year from the date on which he had taken X rays which disclosed definite objective conditions consisting of an injury to the skull and a probable fracture thereof and a separation of the sacroiliac joints in the region of the pelvis. It is true that there is no evidence in the record which specifically establishes that the spasticity and rigidity of the back muscles alone caused the appellee to be totally incapacitated from performing manual labor. But our decisions do not go to the extent of holding that the objective symptoms alone must be of such character as to justify a medical opinion to the effect that a claimant is wholly incapacitated as a result thereof. We are of the opinion that objective indications or findings disclosed by X rays taken one year before testimony is given should not be disregarded as a matter of law. If such a pro-

posed rule were to be followed, then it would follow, also, that X rays taken one year before testimony is given would not be admissible in evidence in the absence of X rays taken later. Many compensation and other personal injury cases are not heard until more than one year after original X-ray examinations of the claimant are made. The question whether X rays are too old and inadequate is usually a question for medical determination rather than legal.

2. Upon a hearing for review and modification of an award for compensation, the burden of establishing changed conditions is upon the party asserting them. Such a burden is not sustained by a respondent, as a matter of law, on appeal to this court, if there is substantial testimony in the record to the effect that the claimant's condition has not changed and that disability still exists as a result of the original injury. Our opinion in the case of *Brewington v. Western Union*, supra, does not hold to the contrary and should not be so construed. The purpose of the rule which holds that an award for future disability must be based in part upon substantial objective evidence is to prevent recovery upon conjecture based merely upon the mental meanderings of a possible malingerer. We have also instances in which the subjective symptoms might be attributable to neurasthenia and in such instances the complaints may be said to be neurasthenic or psychonosematic in character but actual as distinguished from imaginary. In such cases doctors frequently testify that the neurasthenia is or is not traumatic in origin. Appellant contends in this case that subjective neurogenic symptoms alone are not sufficient substantial evidence to justify an award or judgment for future disability upon a hearing which occurs long after the original objective manifestations of traumatic injury have ceased to be observable. We cannot reach decision on that point in this case, however, because of the testimony of Doctor Newman to the effect that the claimant still had, at the time of her last examination, certain objective symptoms which were attributable to the trauma and that her subjective symptoms also could be caused from the original objective injuries to her head, the brain concussion, the probable fracture which she sustained to her skull and to the separation of the sacroiliac joints of the pelvis. The doctor was very positive that the X rays which he took disclosed an injury to the pelvic bones which would have no bearing on a neurogenic condition. In other words, in the present record we have an instance wherein some of the competent testimony, in substance, supports the finding

of the trial court that the results of the original injury still incapacitated the appellee from performing manual labor at the time of the hearing before the commissioner on review and modification.

3. The same legal principles control a case which develops from a review and modification that apply to an original hearing in a compensation case. On appeal to the district court from the award of the commissioner, in such cases, that court has the duty to determine from conflicting evidence whether there has been a change in the physical condition of a claimant, and this court cannot change the district court's findings if they are supported by substantial competent evidence. The situation is practically the same as it is in original hearings. As a consequence, it is well to note that it was set forth in *Bull v. Patti Const. Co.*, 152 Kan. 618, 106 P. 2d 690, that:

"Moreover, the findings as to duration of disability need not rest *solely* upon medical testimony. In this state, unlike some states, it is not essential that duration of disability or *incapacity* be established by medical testimony (*Cowan v. Kerford Quarry Co.*, 146 Kan. 682, 72 P. 2d 999; *Hardwell v. St. Louis S. & R. Co.*, 146 Kan. 870, 876, 73 P. 2d 1120.)" (p. 627.) (Emphasis supplied.)

In reaching the foregoing conclusion, we have not overlooked the medical testimony introduced in behalf of the appellant or the testimony of a neutral physician but we cannot consider any conflicts therein with the testimony offered in behalf of the appellee. (See *Woodring v. United Sash & Door Co.*, 152 Kan. 413, 103 P. 2d 837; *Woodfill v. Lozier-Broderick & Gordon*, 158 Kan. 703, 149 P. 2d 620; *Abbott v. Southwest Grain Co.*, 162 Kan. 315, 176 P. 2d 839; *Cooper v. Helmerich & Payne*, 162 Kan. 547, 178 P. 2d 242, and *Richards v. J-M Service Corp.*, 164 Kan. 316, 188 P. 2d 939.)

The appellant also makes the contention that there was no evidence to justify the trial court in entering an award for medical services and hospital treatment in an amount not in excess of $500. The favorable evidence pertaining to the point is that the appellee was injured on December 27, 1944; that she has been under the care and treatment of a doctor ever since; that there had not been much difference in her condition for a period of approximately a year prior to the time the hearing was had on review and modification, and that her physical incapacity would continue for an indefinite period of probably long duration. There may be an absence of any specific testimony to the effect that it will be necessary for her to have medical attention in the future but in our opinion the

inference in this case fairly arises that the appellee will need the services of a doctor in the future and that the expenses in her case may be somewhat extreme. The evidence establishes that the appellant has been paying her doctor bills from time to time ever since the injury occurred and that the medical expense had exceeded $100 at the time of the last hearing. Nothing in the record compels the conclusion that she will never need additional treatment. As a consequence, we have before us another instance wherein the rule stated in *Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. 2d 846, becomes applicable. From the cited case the following is quoted:

". . . Moreover, the finding as approved, works no hardship on the appellants. One of the theories of treatment for a workman is that he may be rehabilitated so he can go back into industry, and under G. S. 1941 Supp. 44-510 (1) appellants retain the right to question the reasonableness of, and the necessity for, medical services incurred in the future." (p. 366.)

See, also, *Richards v. J-M Service Corp.*, supra.

Appellant also complains because the costs incurred in connection with the taking of the deposition of Doctor Newman, in the amount of $9.75, were taxed against the appellant. The appellant argues that there is no substantial competent evidence in the record concerning the reasonable expense of taking Doctor Newman's deposition and that there is no provision in the workmen's compensation act authorizing such an award. On the last page of the deposition there appeared a sworn statement of the reporter who took the deposition wherein the charge of $9.75 for making the original of the deposition was set forth. The record also shows that counsel for the parties agreed that the deposition should be taken and considered as evidence in the case. The appellee contends that if the deposition had been taken as part of the testimony of the case at the hearing, the transcript would have cost just as much, and that under the rulings of the commissioner of workmen's compensation which were published in 1946, and under the provisions of G. S. 1935, 44-548, 44-549, 44-554 and 44-555, the cost of taking depositions can be charged against the losing litigant. We do not decide the point in this case, however, because there is no showing that the question as to the charge being reasonable was called to the attention of the trial court. And the appellant's specifications of error do not raise the question whether it is unlawful to charge the costs of taking depositions as part of the costs in the case before the commissioner of workmen's compensation.

We note also appellant's contention that certain hypothetical questions which were asked Doctor Newman included matters not in the record at the time of the proceedings on review and modification. No objections to the questions were made at the time they were propounded. The question of proper hypothetical questions has been recently considered by this court in the case of *Cooper v. Helmerich & Payne,* supra. The appellant does not assert error in the admission of improper testimony as part of the specifications of error in this case. Even if we do not consider the testimony given in answer to the hypothetical questions, the evidence is sufficient to sustain the judgment of the district court.

The judgment of the district court is affirmed.